**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **CHARLES N. BENNER, on behalf of himself** : | |
| **and all others similarly situated,** : | |
| : | **C.A No.** |
| **Plaintiff,** : | |
| : | |
| **v.** : | |
| : | **CLASS ACTION** |
| **BANK OF AMERICA, N.A. and** : | |
| **BAC HOME LOANS SERVICING, L.P.** : | |
| : | |
| **Defendants.** : | |
| : | |

## COMPLAINT

### I.   Introduction

1.      This is a class action brought against Bank of America and its mortgage servicing

arm, BAC Home Loans Servicing, LP ("BAC"), the nation's largest residential mortgage

servicing company, on behalf of Pennsylvania homeowners being victimized by wrongful and

illegal debt collection activities.

2.      When a residential mortgage servicer acquires an account already in default, it

becomes a "debt collector" under federal and Pennsylvania law, and therefore subject to the

restrictions imposed generally on all debt collectors.

3.      During the period of time leading up to and following the financial collapse of

2008, Bank of America acquired several massive mortgage portfolios from now-defunct

servicers, including the largest, Countrywide Mortgage, and several smaller servicers, including

one named Wilshire Credit. Plaintiff Benner has a mortgage currently being serviced by Bank of

America that was previously serviced by Wilshire Credit.

4.      Most Pennsylvania home owners threatened with foreclosure due to a default in their residential mortgage payment obligations are protected by several substantive rights granted by two statutes, known as "Act 6" and "Act 91," which rights include:

- the right to cure the delinquency notwithstanding a contractual acceleration of the mortgage debt;

- the right to apply to the Commonwealth of Pennsylvania for funds to cure the delinquency under a revolving loan program known as "HEMAP;"

- a 33-day stay during which no foreclosure action can be commenced in order to provide the borrower an opportunity to reinstate the mortgage and to apply for "HEMAP";

- a required "notice of intention to foreclose"—delivered by way of an official form mandated by the Commonwealth--which triggers the 33-day stay and which, among other things, requires accurate disclosure of the itemized amounts needed to cure the default and

- limitations on the fees and charges that the lender can include in the reinstatement demand disclosed in the notice of intention to foreclose.

Act of January 30, 1974, No. 6, 41 P.S. § 101 et seq., *as amended*, Act of July 8, 2008, No. 57; ("Act 6"); Act of December 23, 1983, No. 91, 35 P.S. § 1680.401c et seq., *as amended*, Act of July 8, 2008, No. 60 ("Act 91").

5.      These laws forbid the commencement of any foreclosure action by any mortgagee who has not fully complied with these notice requirements, 41 P.S. § 403(a); 35 P.S. § 1680.402c(a), and have been interpreted by the courts to mean that strict compliance with the Act 6/Act 91 notice requirements are a jurisdictional precondition to a foreclosure action.

6.      In derogation and disregard of its legal obligations and its customers' rights under Acts 6 and 91, Defendants have routinely and systematically sent improper notices of intention to foreclose which (a) fail to use the mandatory notice of intention to foreclose form and instead substitute a false and misleading version of the notice and (b) contain pre-foreclosure charges, such as property inspection charges, that are impermissible under Acts 6 and 91.

7.      Plaintiff brings this suit on behalf of Pennsylvania residential mortgage borrowers who, like him, were in default at the time of the servicing transfer and against whom Bank of America directed these improper and deceptive pre-foreclosure notices and imposed delinquency charges not permissible under Pennsylvania law.  Plaintiff seeks damages and attorneys' fees for himself and the class for this illegal debt collection activity and he also raises several additional individual damage claims on his own behalf.

## II.      Jurisdiction and Venue

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. 1332(d)(2), since there are at least 100 class members in the proposed class, the combined claims of proposed class members exceed $5,000,000 exclusive of interest and costs, and there are numerous class members who are citizens of states other than Bank of America's state of citizenship, which is Delaware.

9.      This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 with regard to the federal claims raised by Plaintiff.

10.      This Court has personal jurisdiction over Defendants because a substantial portion of the wrongdoing alleged in this Complaint took place in this District, Defendants are authorized to do business in this District, Defendants have sufficient minimum contacts with this District, and/or Defendants intentionally avail themselves of markets in this District through the promotion, marketing and sale of their products and services to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

11.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because the named Plaintiff resides here, because Defendants have hundreds, if not thousands, of customers in this District, because Defendants receive substantial fees from Borrowers in this District,

because Defendants maintain offices and branch banks in this District, and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

**III.    Parties**

12.    Plaintiff Charles Benner is a Pennsylvania home owner residing in Philadelphia, Pennsylvania.

13.    Defendant Bank of America, N.A. ("Bank of America") is a mortgage lender with headquarters in Charlotte, North Carolina.

14.    Defendant BAC Home Loans Servicing, LP ("BAC"), is a subsidiary of Bank of America, N.A., located in Calabasas, California.

15.    At all times herein mentioned, Defendants Bank of America and BAC, both individually and collectively, are and were agents and/or joint venturers of each other, and in doing the acts alleged herein were acting within the course and scope of such agency.

16.    Each Defendant had actual and/or constructive knowledge of the acts of the other Defendant as described herein, and ratified, approved, joined in, acquiesced in, and/or authorized the acts of the other, and/or retained the benefits of said acts. (Hereafter, Plaintiff will refer to both defendants collectively as "Bank of America.")

**IV.    Background**

**A.  Pennsylvania Acts 6 and 91 and the Right to Cure a Mortgage Default**

17.    In 1974, the Pennsylvania General Assembly enacted "Act 6," Act No. 6, January 30, 1974, 41 P.S. § 101 et seq., *as amended*, Act No. 57, July 8, 2008, which created a statutory right to "cure" mortgage defaults up until one year before a sheriff's sale.  41 P.S. § 404.  In the 1974 legislation, that right to cure applied to all residential mortgage obligations with an original principal balance of $50,000 or less.  *See* 41 P.S. § 403.

18.     Under Act 6, the principal tool for implementing the right to cure is a statutory

notice of intention to foreclose which must be furnished to a homeowner-mortgagor at least

thirty (30) days prior to the commencement of any foreclosure action.  The purpose of the notice

is, among other things, to inform the homeowner about his/her right to cure and the precise steps

he/she must take to cure the default, including the actual, itemized amounts needed to bring the

account current. *See* 41 P.S. § 403.

19.     In 1983, in the midst of a severe national recession in which many Pennsylvania

steel plants closed and foreclosure levels spiked, the Legislature passed Act 91, the

Homeowner's Emergency Assistance Act (HEAA).  Act of December 23, 1983, No. 91, 35 P.S.

§ 1680.401c et seq.  This legislation created the unique and nationally recognized "Homeowners

Emergency Mortgage Assistance Program" ("HEMAP"), a state revolving loan program

administered by the Pennsylvania Housing Finance Agency ("PHFA").  Under the HEMAP

program, borrowers in default on their mortgage obligations as a result of some temporary

household budget crisis can apply for a state loan that will bring the mortgage account current.

20.     The Act 91 scheme incorporated the notice of intention to foreclose, already in

use in cases where Act 6 applied, requiring mortgage lenders to advise borrowers of the precise

amounts in default, and of their right to apply for HEMAP as an option for curing that default.

35 P.S. § 1680.403c(b)(1).  Like Act 6, Act 91 prohibits any foreclosure activity during the 30-

days following the notice of intention to foreclose and during any further foreclosure stays

imposed by the statute. 35 P.S. § 1680.402c(a).

21.     Act 91 specifies that the information required by Act 6 and Act 91, where both are

applicable, should be combined into one notice, using an official form notice published by

PHFA.  35 P.S. § 1680.403c(b)(1).

22.     In contrast to Act 6, which reaches only those mortgages with original principal amounts below a set ceiling—which, as of the passage of Act 91 in 1983 was $50,000—Act 91 applies to residential mortgages generally, regardless of the amount of the principal debt.  35 P.S. § 1680.401c(a).  Thus, since 1983, a mandatory notice of intention to foreclose and its accompanying 30-day stay of foreclosure has applied to all residential mortgages in Pennsylvania, with the exception of mortgages guaranteed by the Federal Housing Administration ("FHA").[1]

23.     Both Act 91 and Act 6 contain substantive restrictions on what amounts a mortgage lender can include within the reinstatement demand contained within a notice of intention to foreclose.  Act 91 allows for inclusion of reasonable attorneys' fees, costs, and lender advances, but forbids the inclusion of any such fees or expenses incurred during any period during which the statutory stay against foreclosure is in effect, including the period up to the expiration of the 30 days referenced in the notice.  35 P.S. § 1680.405c(a.1)(1).  Act 6 allows for the inclusion of reasonable, incurred late charges in the demand contained in a notice of intention to foreclosure but does not allow any pre-foreclosure attorneys' fees or costs to be included in the reinstatement demand.  *See* 41 P.S. §§ 404(b), 406(3).

24.     In 2008, in an effort to address the foreclosure crisis being experienced in Pennsylvania, *see* Pa. Dept. of Banking, *"Losing the American Dream:  A Report on Residential Mortgage Foreclosures and Abusive Lending Practices in Pennsylvania," available at http://www.portal.state.pa.us/portal/server.pt,* the General Assembly enacted a series of mortgage reform measures recommended by the Banking Department, including amendments to both Act 6 and Act 91.

---

[1] FHA mortgages are expressly excluded from Act 91 coverage. 35 P.S. § 1680.401c(a)(3).

25.     The amendment to Act 6 raised the coverage ceiling to mortgages having an original bona fide principal of $217,873, subject to annual inflation adjustments to be made by the Department of Banking.  Act of July 8, 2008, No. 57, 41 P.S. § 101 (definition of "Base Figure") (effective September 8, 2008). The adjusted Act 6 ceiling, as of 2010, is $ 219,035. *See* 39 Pa. Bulletin 6474 (Saturday, November 7, 2009)

26.     The amendments to Act 91 included a three-day lengthening of the 30-day foreclosure stay to be referenced in the notice of intention to foreclose and an express authorization for late HEMAP applications to be accepted by PHFA, with decisions on such late applications to be made within 60 days of receipt and, in the event of approval, a new stay of foreclosure proceedings.  Act of July 8, 2008, No. 60, 35 P.S. § 1680.403c(b)(1) (effective September 8, 2008).

27.     The notice requirements imposed by Act 91 are only effective when the HEMAP program is in operation.  The statute delegates to PHFA the authority to suspend the program when the agency determines that it lacks insufficient funds. 35 P. S. § 1680.409c.

28.     Pursuant to that authority, PHFA announced that, due to the failure of the General Assembly to appropriate funds sufficient to operate the HEMAP program, the Act 91 notice requirement was suspended on August 27, 2011. *See* 41 Pa. Bulletin 3943 (Saturday, July 16, 2011).  Accordingly, prior to August 27, 2011 the pre-foreclosure notice requirements of both Act 6 and Act 91 were in effect; as of August 27, 201l—until such time that PHFA decides otherwise—only the requirements of Act 6 are in effect.

**B.      The Role and Conflicting Financial Incentives of Mortgage Servicers**

29.     In recent years, the vast majority of originated residential mortgage loans were sold into a secondary market system known as "securitization."  Mortgages purchased by the

secondary market purchaser are pooled with other mortgages into special-purpose, investment trusts that issue securities backed by the mortgage loans.

30.     In the typical securitization transaction, legal responsibility for managing the individual mortgage accounts—including the collection of payments, communicating with borrowers and, if necessary, instituting foreclosure proceedings—is assigned to a "servicer" which acts as the agent of the investment trust which owns the loans.

31.     It is the servicer that bills the borrowers and collects the interest and principal payments from them.  Generally, servicers are responsible to advance interest and/or principal to the investment trust, regardless of the payments made by individual borrowers.  The servicer also advances whatever costs arise in managing the individual accounts, including, if necessary, the costs of foreclosure.

32.     A decision to initiate a foreclosure—or to offer a borrower an alternative to foreclosure, such as a loan modification—is made by the servicer, ostensibly using its business judgment concerning what course is in the best interest of the investors.  However, the servicer's financial incentives are not necessarily in sync with the investors it is supposed to be representing.

33.     Servicers have four main sources of income including:

- a monthly "servicing fee," which is a fixed percentage of the aggregate, unpaid principal balance of all the loans in the pool;
- late charges and other fees charged to borrowers in default;
- float income from the interest earned on funds held for the trust and
- investment income from interests owned by the servicer itself in the securities issued by the investment trust.

34.     The risk of a loss incurred as a result of a foreclosure is born by the investors holding the mortgage-backed securities, not the servicer.

35.     Servicers no longer have to advance payments to the trust on account of loans that are in foreclosure.  In addition, servicers are ordinarily reimbursed their advances and earned fees off the top of any foreclosure proceeds.  Because of this, a foreclosure can yield revenue for the servicer while it is producing a loss for the investors.

36.     Particularly given the current glut in foreclosed properties and the general low level of real estate values, a foreclosure will generally produce substantial loss to the investors, unless the amount of the mortgage debt is significantly below the amount the property will realize at the foreclosure judgment sale.  According to recent research, the average residential foreclosure in November, 2008 yielded a loss of $145,000, or 55% of the amount due.  By June, 2009, the average loss severity was even higher, at 65%.  House Subcommittee on Commercial and Administrative Law, "Home Foreclosures: Will Voluntary Mortgage Modification Help Families Save Their Homes?" (testimony of Prof. Alan M. White).

37.     Loss mitigation actions like loan modifications which preserve a future payment stream for investors—albeit at lower levels than the mortgage contract provides—can reduce the level of losses caused by a loan default and are often more financially beneficial to investors than a foreclosure.

38.     Most securitization transactions impose on servicers the duty to employ sound business judgment and generally accepted mortgage servicing standards, as if the servicer itself owned the loan.  Thus, where a loss mitigation alternative to foreclosure is in the interest of the investor, the servicer not only has the discretion, but the duty, to attempt such alternative.

39.     While loss mitigation is often beneficial to both investors and homeowners, it usually costs the servicer, whose financial interests favor a foreclosure.  A servicer deciding

between a foreclosure and a loan modification faces likely losses if the loan is modified but potential gains from a foreclosure.

40.    Bank of America is the largest mortgage servicer in the nation, servicing millions of individual mortgage loans.  While both federal and state public policy is attempting to reduce the level of foreclosures, and while loan modifications and other loss mitigation strategies are often in the interest of both investors and homeowners, Bank of America has a financial incentive in resisting such alternatives to foreclosure and, instead, pushing borrowers into foreclosure, in disregard of its duties as a servicer.

## V.    Facts of the Case

### A.    Facts Pertaining to Plaintiff Charles Benner

41.    Plaintiff Charles Benner purchased his home in Northeast Philadelphia in 2002.

42.    During the next several years he entered into a series of loan refinancing transactions, the last of them with a subprime lender named Allied Mortgage Group, in July 2006.

43.    The Allied Mortgage Group loan was an adjustable rate loan with an original principal balance of $147,000.

44.    Allied Mortgage made the loan with the expectation of selling it into the secondary market and, in fact, did so, shortly after the loan closed.  The loan was sold into a securitization trust for which the assigned servicer was a company named Wilshire Credit Corp.

45.    Sometime during 2009, Plaintiff Benner fell behind in his payments to Wilshire, due to the multiple effects of a drop in his household income and regular, upward rate adjustments.

46.     Upon information and belief, Mr. Benner's loan is held by a securitization trust that imposes on its servicer the duty to employ sound business judgment and generally accepted mortgage servicing standards.

47.     In December 2009, consistent with its servicing duties, Wilshire offered Mr. Benner, and he accepted, a loss mitigation option to address the default:  a temporary loan modification which would, among other things, convert his loan into a fixed rate loan and would reduce his monthly payments.

48.     At the time Wilshire made the offer, Mr. Benner was approximately one or two payments in arrears on his contractual payment obligation.

49.     Mr. Benner's agreement with Wilshire required him to pay $1,078.74/month for three months, after which the temporary modification would be made permanent.

50.     Mr. Benner made the three payments and continued to pay the $1,078.74/month to Wilshire.

51.     At some point after he signed the loan modification agreement with Wilshire, Mr. Benner was notified that the servicing of his loan had been transferred from Wilshire to Defendant Bank of America.

52.     Following the transfer of servicing rights from Wilshire to Defendant Bank of America, Mr. Benner continued to make the $1,078.74/month payment he had been making to Wilshire, but he now made this payment to Defendant Bank of America (as Bank of America instructed him to do), which accepted those payments.

53.     On October 29, 2010, Defendant Bank of America advised Mr. Benner by letter that, notwithstanding the contrary earlier decision by Wilshire, he was not eligible for a loan modification.

54.     About a week later, on or about November 8, 2010, Defendant Bank of America mailed Mr. Benner a Notice of Intention to Foreclose (the "November 8, 2010 Notice"), a copy of which is attached hereto as Exhibit "A."

55.     Among other things the November 8, 2010 Notice informed Mr. Benner that, in order to avoid foreclosure, he needed to pay amounts due totaling $27,184.02.  This figure was itemized as including $27,404.04 in "Monthly Charges" from July 2009 through September 2010, plus late charges of $722.64 and property inspection charges of $262.50, less $1,205.06 for a "Partial Payment Balance."

56.     On or about December 16, 2010, Defendant Bank of America sent Mr. Benner another Notice of Intention to Foreclose (the "December 16, 2010 Notice"), similar to the November 8, 2010 Notice.  A copy of that notice is attached as Exhibit "B." Among other things the December 16, 2010 Notice informed Mr. Benner that, in order to avoid foreclosure, he needed to pay amounts due totaling $27,251.32.  This figure included an itemization similar to the itemization in the November 8, 2010 Notice, including the demand for reimbursement of property inspection charges.

57.      Plaintiff Benner's mortgage contract grants to the mortgagee the right to protect and preserve its rights in the collateral and to assess the account with reasonable expenses incurred as a result of exercising such right, as does most, if not all, mortgage instruments commonly in use. The mortgage also grants the mortgagee the right to inspect the property upon providing advance reasonable notice to the mortgagee.

58.     Such "property preservation" clauses do not, nor do other form mortgage contracts generally, allow for the incurring of monthly property inspection charges merely as a consequence of a payment delinquency without any individualized reason to believe the

mortgaged property is vacant or otherwise at risk; nor do property inspection clauses ordinarily allow for the imposition of monthly property inspection charges without any prior notice to the mortgagor.

59.     Bank of America imposed these property inspection charges without any reasonable basis for believing that Mr. Benner had vacated his home or that the property was in any way at risk, and without any prior notice that it sought to inspect the property for some purpose.  Instead, Bank of America imposed the charges in conformity to its usual practice of automatically imposing monthly property inspection charges as a consequence of an account being classified as being in default.

60.     Plaintiff does not know if, in fact, any of these property inspections ever occurred, and he has never had any communication from Bank of America seeking access to the property for any reason.

61.     Property inspection charges are not an authorized component of a cure demand under Act 6, *see* 41 P.S. § 404(b), and cannot, under Act 91, be demanded before the expiration of the 33-day period for contacting a housing counseling agency.  *See* 35 P.S. § 1680.405c(a.1)(1).

62.     The two Act6/Act 91 Notices sent by Bank of America to Plaintiff were improper, among other reasons, because:

a.      Both notices improperly demand payment of inspection charges which, under 35 P.S. § 1680.405c(a.1)(1) and 41 P.S. § 404(b), are not an allowable component of a reinstatement demand contained within a combined Act 6/Act 91 notice;

b.      Both notices improperly included a demand for late charges not owing in that they were imposed for months where Plaintiff made a timely payment in an amount authorized by Bank of America or its predecessor servicer;

c.      Both notices improperly included a demand for "monthly charges" not owing;

d.      Both notices improperly included a demand for "monthly charges" that, given the history of authorizing payments at a reduced level, pursuant to a loss mitigation agreement,

should have been explained so that Plaintiff could understand and challenge any incorrect calculation of the stated delinquency.

63.     Besides inserting inaccurate and grossly inflated amounts due in the Pennsylvania notices of intention to foreclose, Defendants also failed to use the mandatory official form, using instead their own version of the mandated notice.

64.     Among the modifications Defendants improperly made to the notice form they used, they inserted the Bank of America logo at the top of the notices—thereby making it seem more like a Bank of America form rather than an official Commonwealth notice mandated by Act 91.  In a similar vein, the notice improperly includes and incorporates a Bank of America payment stub into the official form.

65.     The form notice employed by Defendants also falsely advises borrowers that they must have a "face-to-face meeting" with a PHFA-approved counseling agency within 30 days of the date of the notice when in fact they have 33 days.  *See* 35 P.S. § 1680.403c(b)(1) ("This notice shall also advise the mortgagor . . .  that such mortgagor has thirty (30) days, plus three (3) days for mailing, to have a face-to-face meeting with a consumer credit counseling agency to attempt to resolve the delinquency or default by restructuring the loan payment schedule or otherwise.").

66.     The official notice mandated by PHFA is supposed to contain the following language:

APPLICATION FOR MORTGAGE ASSISTANCE -- Your mortgage is in default for the reasons set forth later in this Notice (see following pages for specific information about the nature of your default.) You have the right to apply for financial assistance from the Homeowner's Emergency Mortgage Assistance Program. To do so, you must fill out, sign and file a completed Homeowner's Emergency Assistance Program Application with one of the designated consumer credit counseling agencies listed at the end of this Notice. Only consumer credit counseling agencies have applications for the program and they will assist you in submitting a complete application to the Pennsylvania Housing Finance Agency. To temporarily stop the lender from filing a foreclosure action, your

application MUST be forwarded to PHFA and received within thirty (30) days of your face-to-face meeting with the counseling agency

YOU SHOULD FILE A HEMAP APPLICATION <u>AS SOON AS POSSIBLE</u>. IF YOU HAVE A MEETING WITH A COUNSELING AGENCY WITHIN 33 DAYS OF THE POSTMARK DATE OF THIS NOTICE AND FILE AN APPLICATION WITH PHFA WITHIN 30 DAYS OF THAT MEETING, THEN THE LENDER WILL BE TEMPORARILY PREVENTED FROM STARTING A FORECLOSURE AGAINST YOUR PROPERTY, AS EXPLAINED ABOVE, IN THE SECTION CALLED "TEMPORARY STAY OF FORECLOSURE".

YOU HAVE THE RIGHT TO FILE A HEMAP APPLICATION <u>EVEN BEYOND THESE TIME PERIODS</u>. A LATE APPLICATION WILL NOT PREVENT THE LENDER FROM STARTING A FORECLOSURE ACTION, BUT IF YOUR APPLICATION IS EVENTUALLY APPROVED AT ANY TIME BEFORE A SHERIFF'S SALE, THE FORECLOSURE WILL BE STOPPED.

67.     Instead of using the required language, in block print, for the last two paragraphs in the above portion of the official notice, the notice Defendants sent Plaintiff advised him that he had only thirty days to apply—instead of the required thirty-three days—and omitted the disclosure that HEMAP applications beyond the initial thirty-three-day period could be filed, improperly replacing the required language with the following:

**YOU <u>MUST</u> FILE YOUR APPLICATION PROMPTLY.  IF YOU FAIL TO DO SO OR IF YOU DO NOT FOLLOW THE OTHER TIME PERIODS SET FORTH IN THIS LETTER, FORECLOSURE MAY PROCEED AGAINST YOUR HOME IMMEDIATELY AND YOUR APPLICATION FOR MORTGAGE WILL BE DENIED.**

68.     Thus, besides failing to use the required language, Defendants misrepresented and distorted Plaintiffs' rights with regards to submitting a HEMAP application.

69.     The official notice requires the servicer to include specific identifying information about the loan, including the name of the original lender.  The form notice sent Plaintiff leaves that information blank.

70.     The reinstatement amounts disclosed in the Notices of Intention to Foreclose are wildly incorrect.  The listed unpaid Monthly Charges and the Late Charges as part of

Defendants' payment demand are not due and owing, as Plaintiff has continued to make monthly payments.

71.     Upon information and belief, Defendants have allocated some portion of the payments Plaintiff has been making to these improper property inspection charges.

72.     The inexplicable nature of the "Monthly Charges" Defendants listed on the Notices of Intention to Foreclose attached hereto as Exhibits A and B is illustrated by the fact that, prior to entering into a modification plan with Wilshire, Plaintiff's monthly mortgage payment was approximately $1,050.00, excluding amounts for property taxes which Plaintiff paid separately.

73.     Plaintiff began making modified payments under a loan modification with Wilshire in December 2009, at which time he was, at most, one month delinquent in paying his mortgage.  From December 2009 through his receipt of the Notices of Intention to Foreclose attached hereto, he timely made modified payments in the amount of $1,078.74 per month.  The modified payments included amounts for property taxes.  Thus, there is no possible way Plaintiff could owe Defendants the more than $27,000 in monthly charges demanded in the Notices of Intention to Foreclose.

74.     On three occasions, pursuant to his rights under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e), Mr. Benner sent written correspondence to Bank of America, requesting an explanation from the Bank regarding the amounts it claimed he owed.  These letters, referred to as "qualified written requests" under RESPA, are attached hereto as Exhibits C, D, and E.

75.     Although Bank of America acknowledged receiving these written inquiries from Mr. Benner, it failed to provide any of the information specifically requested by Mr. Benner in those inquiries.

76.     Further, after obtaining his credit reports from the three major credit bureaus, Equifax, Experian, and Trans Union, Mr. Benner became aware that Defendants were reporting him to these bureaus as owing the inaccurate amounts past due reflected in the Notices of Intention to Foreclose and for which he had been repeatedly requesting clarification.

77.     Defendants had also reported Plaintiff as 180 days or more delinquent since at least May 2010, at which time Plaintiff had been making and Defendants had been accepting modified payments since December 2009.

78.     Plaintiff sent letters to each of the credit bureaus disputing Defendants' reporting of his mortgage loan but was informed by each of the bureaus that no changes would be made to the reporting of his mortgage loan because Defendants had informed the credit bureaus that their reporting of Plaintiff's mortgage loan was correct.

**B.     Facts Pertaining to the Class**

79.     The facts pertaining to Plaintiff are not unique.  Rather, they reflect the common and customary practices used by Defendants in servicing residential mortgages on Pennsylvania properties.

80.     Regarding the Pennsylvania loans in its servicing portfolio, Defendants are, as illustrated by the experience of Plaintiff Benner, systematically charging borrowers monthly property inspection charges.  This charging occurs without regard to the provisions of the particular mortgage instrument, without any particular information or concern that the property is vacant or otherwise at risk and without any prior notice to the borrower.  On the contrary, the

charging occurs as an automatic consequence of an account being classified as two months or more delinquent.

81.     Regarding the Pennsylvania loans in its servicing portfolio, Defendants have systematically misused the Act 6/Act 91 notice of intention to foreclose — which is supposed to be a legally mandated instrument for assisting borrowers to save their homes — by turning it into an instrument for confusing and demoralizing borrowers through demands for payment of inflated and incorrect amounts as a condition of avoiding foreclosure.

82.     Among other things, Defendants incorrectly inflate the disclosed amount needed to cure by including property inspection charges and other advances which, besides not being contractually owing, cannot be charged prior to the expiration of the stay for applying for HEMAP, 35 P.S. § 1680.405c(a.1)(1), and cannot be included in the mandated pre-foreclosure notice disclosing the amount needed to cure. 41 P.S. § 404(b) (allowing as component of cure demand only back payments owed, accrued late charges and the reasonable "costs of proceeding to foreclosure").

83.     Defendants are, as a matter of general practice, wrongfully imposing such charges on borrower accounts and wrongly misappropriating borrower funds to such charges.

84.     Further, Defendants have been using an improper, substitute version of the legally mandated Act 6/Act 91 notice which violates and undermines the letter and spirit of Acts 6 and 91 by, among other things:

    a.   Inserting its logo onto an official Commonwealth form;

    b.   Inserting and incorporating a Bank of America payment stub into the official form;

    c.   Failing to include the name of the original lender that made the loan, thereby preventing PHFA from gathering loan origination data from delinquent loans in the Bank of America portfolio;

18

      d.   Falsely advising borrowers that they have only 30 days from the date of the notice to meet with a housing counselor for the purpose of initiating a HEMAP application and receiving the benefit of the Act 91 stay of foreclosure when, in fact, the stay lasts for 33 days and

      e.   Falsely advising borrowers that their ability to apply for HEMAP ends after the expiration of the 33-day stay and falsely stating that any late application will be denied for being out of time when, in fact, borrowers can apply for HEMAP after the expiration of the stay.

## VI.   Class Action Allegations

85.    Plaintiff brings this action individually and as a class action, pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure, on behalf of the following class:

> All individuals in the Commonwealth of Pennsylvania with residential mortgage loans as to which the servicing rights were transferred to one or both Defendants while the mortgage loan was in default and who: (a) received from either Defendant a combined Act 6/Act 91 Notice; (b) were charged property inspection charges; and (c) still own the mortgaged property.

86.    The Class is so numerous as to make it impracticable to bring all members before the Court.  Plaintiff believes that thousands, perhaps tens of thousands, of Pennsylvania residents received improper notices of intention to foreclose from Defendants and were improperly charged for property inspections.  The exact number of members is unknown but can be determined from records maintained by the Defendants.  In many instances, such persons are unaware that claims exist on their behalf.  If the Class members have knowledge of their claims, their damages are in such amounts that when taken individually are too small to justify the expense of a separate lawsuit. However, on a class-wide basis, the total damages are in an amount that makes litigation financially feasible.

45.    There are common questions of law and fact that affect the rights of each member of the Class.  Among the predominating common questions of fact and law are the following:

a)      Whether the notices of intention to foreclose which Defendants sent to Plaintiff and Class members violated Act 6;

b)      Whether the notices of intention to foreclose which Defendants sent to Plaintiff and Class members violated Act 91;

c)      Whether Defendants' notices of intention to foreclose violated the FDCPA;

d)      Whether Defendants' notices of intention to foreclose violated the FCEUA;

e)      Whether Defendants' notices of intention to foreclose violated the UTPCPL;

f)      Whether Defendants were unjustly enriched by their false, unfair, and deceptive practices as alleged herein;

g)      Whether Plaintiff and the members of the Class are entitled to damages and attorneys' fees for Defendants' unlawful conduct described herein.

87.     The claims of the representative plaintiff are typical of the claims of the Class because Plaintiff and the members of the Class received improper notices of intention to foreclose from Defendants and suffered ascertainable losses in the form of payment of unlawful fees and charges.

88.     The representative plaintiff will assure the adequate representation of all members of the Class and has no conflict with Class members in the maintenance of this class action.  The plaintiff's claims are typical of the claims of the Class members.

89.     Plaintiff has retained counsel who are experienced in litigating class actions, have handled many class actions in state and federal courts and will adequately represent the interests of the Class.

90.     Questions of law and fact common to class members predominate over any questions affecting only individual members.

91.     A class action is the superior method of fairly and efficiently adjudicating this controversy.

## VII.   Causes Of Action

### COUNT I
**(Violation of the FDCPA, 15 U.S.C. §1692)**
**(On behalf of the Class)**

92.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

93.     Plaintiff is a "consumer" within the meaning of section 1692a(3) of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692a(3).

94.     Defendants are "debt collectors" within the meaning of section 1692a(6) of the FDCPA, 15 U.S.C. § 1692a(6), because, at the time Defendants acquired the servicing rights to Plaintiff's and Class members' mortgage loans, the loans were in default.

95.     The combined Act 6/Act 91 Notices sent to Plaintiff and Members of the Class were "communications" relating to a "debt" as defined by 15 U.S.C. §§ 1692a(2) and 1692a(5).

96.     As a result of the above-described conduct, Defendants have violated 15 U.S.C. §§ 1692e(2)(A) and 1692f(1) by demanding and collecting property inspection charges which were not legally owed.

97. As a result of the above-described conduct, Defendants have violated 15 U.S.C.

§§ 1692e and1692f by sending false, deceptive, misleading and/or unfair Act 6/Act 91 notices

that:

      a. Demand property inspection charges not owing;

      b. Improperly substitute Bank of America's own form notice of intention to foreclose for the official notice mandated by the PHFA and improperly change the officially mandated language prescribed by the official PHFA notice;

      c. Falsely advise borrowers that they must have a "face-to-face meeting" with a PHFA-approved counseling agency within 30 days of the date of the notice when in fact borrowers had 33 days. *See* 35 P.S. § 1680.403c(b)(1).

      d. Insert Bank of America's logo and a Bank of America payment stub into what is supposed to be an official, state-mandated form, thereby obfuscating the purpose of the notice and

      e. Falsely advise borrowers that their ability to apply for HEMAP ends after the expiration of the 33-day stay and falsely imply that any late application will be denied for being out of time when, in fact, borrowers can apply for HEMAP after the expiration of the stay.

98. As a result of the foregoing violations of the FDCPA, with regard to Class

Members who have paid property inspection charges from the period one year prior to the filing

of this action until the date of class certification, Defendants are liable to the Plaintiff and

members of the Class for the sum of actual damages (including all improperly charged property

inspection charges), costs and attorneys' fees, as provided by 15 U.S.C. § 1692k.

99. As a result of the foregoing violations of the FDCPA, with regard to Class

Members who received improper Act 6/Act 91 notices from the period one year prior to the

filing of this action until the date of class certification, Defendants are liable to the Plaintiff and

members of the Class for the sum of actual damages, statutory damages of $500,000, costs and

attorneys' fees, as provided by 15 U.S.C. § 1692k.

**COUNT II**
**(Violation of the FCEUA, 73 P.S. § 2270.1 *et seq.,* and UTPCPL, 73 P.S. § 201-1 *et seq.*)**
**(On Behalf of the Class)**

100.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

101.     Defendants are "debt collectors" as defined by section 2270.3 of the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA"), 73 P.S. §2270.3.

102.     Plaintiff is a "debtor" as defined by 73 P.S. § 2270.3.

103.     The Notices of Intention to Foreclose sent by Defendants are "communications" relating to a "debt" as defined by 73 P.S. § 2270.3.

104.     Pursuant to 73 P.S. §2270.4(a), any violation by a debt collector of the FDCPA is a violation of the FCEUA.

105.     As set forth in Count I of this Complaint, Defendants have violated sections 1692e and 1692f of the FDCPA.

106.     Debt collection violations under the FCEUA are *per se* violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 *et seq.*, *see* 73 P.S. §2270.5, and, therefore, are subject to the remedy of treble damages, not less than $100 per individual, plus attorney's fees. *See* 73 P.S. § 201-9.2.

107.     As a result of the above-described debt-collection conduct, Defendants are liable to members of the Class in the amount of three times any property inspection charges imposed on them, but not less than $100, plus reasonable attorneys' fees and costs.

**COUNT III**
**(Unjust Enrichment on Behalf of the Class)**

108.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

109.     Without regard to the provisions contained in individual mortgage contracts with regard to the imposition of monthly inspection charges, and in violation of the pre-foreclosure limitations on such charges imposed by Act 6 and Act 91, Defendants have been and continue to assess such charges, in furtherance of their own fee-generating interests.

110.     Because Defendants were not and are not authorized to collect and retain these charges, it would be unjust to allow Defendants to retain them.

111.     In order to prevent Defendants from being unjustly enriched, all Class members are entitled to the imposition of a constructive trust for their benefit, consisting of all improper inspection charges that Defendants have collected from Class members and retained.

112.     Under the doctrine of unjust enrichment, Defendants are liable to all Class members for the improper inspection charges which they have unlawfully collected.

## COUNT IV
### (Violation of RESPA, on Behalf of Plaintiff Individually)

113.      Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

114.     The mortgage at issue is a "federally related mortgage" subject to the requirements of 12 U.S.C. § 2605(e).

115.     Plaintiff, who, despite his compliance with the loss mitigation obligations imposed by the previous servicer, was told by Bank of America that it intended to foreclose and that, to avoid foreclosure, he had to pay tens of thousands of dollars in unexplained back payments and charges, directed written inquiries to the bank on at least three occasions, during the period February to April, 2011, requesting, among other things, information about  (i) why the bank was not honoring the loan modification commitment made by Wilshire Credit, (ii) the criteria being used by the bank to decide whether Plaintiff might be qualified for some other loss

24

mitigation program that would help him save his home and (iii) the itemized components of the

cure breakdown included in the Act 6/Act 91 notices. (Copies of these letters, dated February 4,

2011, March 11, 2011, and April 13, 2011, are attached hereto as Exhibits C, D, and E).

116.    The said written inquiries were "qualified written requests," as defined by 12

U.S.C. § 2605(e)(1)(B).

117.    Contrary to its obligation under 12 U.S.C. § 2605(e)(2), Bank of America failed

to investigate the inquiries and failed to provide Plaintiff with the requested explanations and

information.

118.    Bank of America has engaged in a pattern and practice of failing to comply with

12 U.S.C. § 2605(e), including but not limited to, its conduct with regard to Plaintiff.

119.    As a result of Defendants' conduct, Plaintiff has suffered fear, anxiety and other

emotional distress.

120.    Plaintiff is entitled to the sum of his actual damages, statutory damages of $1,000,

and reasonable attorney's fees and costs under 12 U.S.C. § 2605(f).

## COUNT V
### (Violation of the FCRA, on Behalf of Plaintiff Individually)

121.    Plaintiff incorporates the foregoing paragraphs as though the same were set forth

at length herein.

122.    During the periods in which Plaintiff's "qualified written requests" to Defendants

were outstanding, Defendants were prohibited from furnishing negative credit reports to

consumer reporting agencies regarding Plaintiff's account.  12 U.S.C. § 2605(e)(3).

123.    Defendants ignored this prohibition and continued to report the mortgage default

to the three major credit bureaus as if the "qualified written requests" had never been submitted.

124.    Between July 27 and August 9, 2011, Plaintiff sent dispute letters to each of the

three credit bureaus, pursuant to his rights under the Fair Credit Reporting Act, 15 U.S.C. § 1681i, bringing to their attention the fact that Defendants were inaccurately reporting the amount of the default on Plaintiff's mortgage and inaccurately failing to report the loss mitigation agreement granted by the previous servicer and performed by Plaintiff. (Copies of the dispute letters are attached as Exhibits F, G, and H).

125.    As a result of the credit reporting disputes initiated by Plaintiff, each of the three credit bureaus informed Defendants about the disputes and requested that Defendants conduct an investigation regarding the facts underlying the disputes, including a consideration of the inaccuracies cited by Plaintiff in his dispute letters.

126.    Although Defendants were obligated under 15 U.S.C. § 1681s-2(b) to reinvestigate the facts, taking into account the information supplied by Plaintiff to the credit bureaus, Defendants provided *pro-forma* replies to the bureaus, informing them that the negative reports about the mortgage should remain on Plaintiff's credit reports.

127.    This failure by Defendants to comply with 15 U.S.C. § 1681s-2(b) was willful.

128.    Plaintiff is entitled to statutory damages of $1,000, such punitive damages as the court directs, and reasonable attorney's fees and costs. 15 U.S.C. § 1681n(a).

## VIII.    Prayer for Relief

WHEREFORE, Plaintiff respectfully prays that relief be granted as set forth above and also as follows:

(a)    An Order certifying and directing notice to the Class identified, pursuant to Rule 23, Fed. R. Civ. P.;

(b)    An Order appointing Plaintiff and Plaintiff's counsel to represent the Class;

(c)    Actual and statutory damages for the Class under the FDCPA;

(d)     Actual and treble damages for the Class under the FCEUA and UTPCPL;

(e)     Actual damages for the Class on the claim of unjust enrichment alleged herein;

(c)     Actual, statutory, and punitive damages for Plaintiff only under the RESPA and

        FCRA claims alleged herein;

(d)     An award of reasonable attorney's fees and costs; and

(e)     Such other relief as the Court deems just and appropriate.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury for all

issues so triable under the law.

Dated:  October 20, 2011                     Respectfully submitted,

_Noah Axler (Pa. I.D. No. 85324)_
Noah Axler (Pa. I.D. No. 85324)
Michael D. Donovan
DONOVAN AXLER, LLC
1845 Walnut Street, Suite 1100
Philadelphia, PA  19103
(215) 732-6067
naxler@donovanaxler.com
mdonovan@donovanaxler.com


Irv Ackelsberg
LANGER GROGAN & DIVER, PC
1717 Arch Street, Suite 4130
Philadelphia, PA 19103
Tele:  (215) 320-5701
Fax:  (215) 320-5703
iackelsberg@langergrogan.com

# EXHIBIT A



**Bank of America**

**Home Loans**
P.O. Box 660694
Dallas, TX  75266-0694

*Send Payments to:*
*P.O. Box 15222*
*Wilmington, DE  19886-5222*

November 8, 2010

**Account No.:** ███████
**Property Address:**
3317 Gurley Rd
Philadelphia, PA  19154-1501

Charles Benner
3317 GURLEY RD
PHILADELPHIA, PA  19154-1501

**Current Servicer:**
BAC Home Loans Servicing, LP

# ACT 91 NOTICE
# TAKE ACTION TO SAVE
# YOUR HOME FROM
# FORECLOSURE

**This is an official notice that the mortgage on your home is in default, and the lender intends to foreclose. Specific information about the nature of the default is provided in the attached pages.**

**The HOMEOWNER'S EMERGENCY MORTGAGE ASSISTANCE PROGRAM (HEMAP) may be able to help to save your home. This Notice explains how the program works.**

**To see if HEMAP can help, you must MEET WITH A CONSUMER CREDIT COUNSELING AGENCY WITHIN 30 DAYS OF THE DATE OF THIS NOTICE. Take this Notice with you when you meet with the Counseling Agency**

**The names, addresses and phone numbers of Consumer Credit Counseling Agencies serving your County are listed at the end of this Notice. If you have any questions, you may call the Pennsylvania Housing Finance Agency toll free at 1-800-342-2397. (Persons with impaired hearing can call 1-717-780-1869).**

This Notice contains important legal information. If you have any questions, representatives at the Consumer Credit Counseling Agency may be able to help explain it. You may also want to contact an attorney in your area. The local bar association may be able to help you find a lawyer.

LA NOTIFICACIÓN EN ADJUNTO ES DE SUMA IMPORTANCIA, PUES AFECTA SU DERECHO A CONTINUAR VIVIENDO EN SU CASA. SI NO COMPRENDE EL CONTENIDO DE ESTA NOTIFICACIÓN OBTENGA UNA TRADUCCIÓN INMEDIATAMENTE LLAMANDO ESTA AGENCIA (PENNSYLVANIA HOUSING FINANCE AGENCY) SIN CARGOS AL NÚMERO MENCIONADO ARRIBA. PUEDE SER ELEGIBLE PARA UN PRÉSTAMO POR EL PROGRAMA LLAMADO "HOMEOWNER'S EMERGENCY MORTGAGE ASSISTANCE PROGRAM" EL CUAL PUEDE SALVAR SU CASA DE LA PERDIDA DEL DERECHO A REDIMIR SU HIPOTECA.

| | |
|---|---|
| HOMEOWNER'S NAME(S): | **Charles Benner** |
| PROPERTY ADDRESS: | **3317 Gurley Rd** |
| | **Philadelphia, PA  19154-1501** |
| LOAN ACCT. NO.: | ███████ |
| ORIGINAL LENDER: | |
| CURRENT LENDER/SERVICER: | **BAC Home Loans Servicing, LP, a subsidiary of Bank of America, N.A.** |

## HOMEOWNER'S EMERGENCY MORTGAGE ASSISTANCE PROGRAM

**YOU MAY BE ELIGIBLE FOR FINANCIAL ASSISTANCE WHICH CAN SAVE YOUR HOME FROM FORECLOSURE AND HELP YOU MAKE FUTURE MORTGAGE PAYMENTS.**

BAC Home Loans Servicing, LP is a subsidiary of Bank of America, N.A.

Please write your account number on all checks and correspondence.
We may charge you a fee for any payment returned or rejected by your financial institution, subject to applicable law.

BLQPA1 11722 03/08/2010

**Payment Instructions:**

- Make your check payable to BAC Home Loans Servicing, LP
- Don't send cash
- Please include coupon with your payment

For all full month payment periods, interest is calculated on a monthly basis. Accordingly, interest for all full months, including February, is calculated as 30/360 of annual interest, irrespective of the actual number of days in the month. For partial months, interest is calculated daily on the basis of a 365 day year.

*Account Number* ███████
Charles Benner
3317 Gurley Rd
Philadelphia, PA  19154-1501

BLQPA1

Balance Due for charges listed above: $27,184.02 as of November 8, 2010.
Please update e-mail information on the reverse side of this coupon.

| Additional Principal | |
|---|---|
| Additional Escrow | |
| Check Total | |

BAC Home Loans Servicing, LP
PO BOX 15222
Wilmington, DE  19886-5222

0229576152000027184020027184O2



⑆586990058⑆ 229576l5⑈

*REDACTED*

I0-62-1036B  04-2009  (Former SS30)

IF YOU COMPLY WITH THE PROVISIONS OF THE HOMEOWNER'S EMERGENCY MORTGAGE ASSISTANCE ACT OF 1983 (THE "ACT"), YOU MAY BE ELIGIBLE FOR EMERGENCY MORTGAGE ASSISTANCE:

IF YOUR DEFAULT HAS BEEN CAUSED BY CIRCUMSTANCES BEYOND YOUR CONTROL,

IF YOU HAVE A REASONABLE PROSPECT OF BEING ABLE TO PAY YOUR MORTGAGE PAYMENTS, AND

IF YOU MEET OTHER ELIGIBILITY REQUIREMENTS ESTABLISHED BY THE PENNSYLVANIA HOUSING FINANCE AGENCY.

**TEMPORARY STAY OF FORECLOSURE** - Under the Act, you are entitled to a temporary stay of foreclosure on your mortgage for Thirty (30) days from the date of this Notice. During that time you must arrange and attend a "face-to-face" meeting with one of the consumer credit counseling agencies listed at the end of this Notice. **THIS MEETING MUST OCCUR WITHIN THE NEXT THIRTY (30) DAYS. IF YOU DO NOT APPLY FOR EMERGENCY MORTGAGE ASSISTANCE, YOU MUST BRING YOUR MORTGAGE UP TO DATE. THE PART OF THIS NOTICE CALLED "HOW TO CURE YOUR MORTGAGE DEFAULT" EXPLAINS HOW TO BRING YOUR MORTGAGE UP TO DATE.**

**CONSUMER CREDIT COUNSELING AGENCIES** - If you meet with one of the consumer credit counseling agencies listed at the end of this notice, the lender may NOT take action against you for Thirty (30) days after the date of this meeting. The names, addresses and telephone numbers of designated consumer credit counseling agencies for the county in which the property is located are set forth at the end of this Notice. It is only necessary to schedule one face-to-face meeting. Advise your lender immediately of your intentions.

**APPLICATION FOR MORTGAGE ASSISTANCE** - Your mortgage is in default for the reasons set forth later in this Notice (see following pages for specific information about the nature of your default.) If you have tried and are unable to resolve this problem with the lender, you have the right to apply for financial assistance from the Homeowner's Emergency Mortgage Assistance Program. To do so, you must fill out, sign and file a completed Homeowner's Emergency Assistance Program Application with one of the designated consumer credit counseling agencies listed at the end of this Notice. Only consumer credit counseling agencies have applications for the program and they will assist you in submitting a complete application to the Pennsylvania Housing Finance Agency. Your application MUST be filed or postmarked within Thirty (30) days of your face-to-face meeting.

YOU **MUST** FILE YOUR APPLICATION PROMPTLY. IF YOU FAIL TO DO SO OR IF YOU DO NOT FOLLOW THE OTHER TIME PERIODS SET FORTH IN THIS LETTER, FORECLOSURE MAY PROCEED AGAINST YOUR HOME IMMEDIATELY AND YOUR APPLICATION FOR MORTGAGE ASSISTANCE WILL BE DENIED.

**AGENCY ACTION** - Available funds for emergency mortgage assistance are very limited. They will be disbursed by the Agency under the eligibility criteria established by the Act. The Pennsylvania Housing Finance Agency has sixty (60) days to make a decision after it receives your application. During that time, no foreclosure proceedings will be pursued against you if you have met the time requirements set forth above. You will be notified directly by the Pennsylvania Housing Finance Agency of its decision on your application.

NOTE: IF YOU ARE CURRENTLY PROTECTED BY THE FILING OF A PETITION IN BANKRUPTCY, THE FOLLOWING PART OF THIS NOTICE IS FOR INFORMATION PURPOSES ONLY AND SHOULD NOT BE CONSIDERED AS AN ATTEMPT TO COLLECT THE DEBT.

**(If you have filed bankruptcy you can still apply for Emergency Mortgage Assistance.)**

**NATURE OF THE DEFAULT** - The MORTGAGE debt held by the above lender on your property located at:

3317 Gurley Rd Philadelphia, PA  19154-1501

IS SERIOUSLY IN DEFAULT because

**YOU HAVE NOT MADE MONTHLY MORTGAGE PAYMENTS for the following months and the following amounts are now past due:**

| | | | |
|---|---|---|---|
| Monthly Charges: | 07/01/2009 | | $3,463.68 |
| | 09/01/2009 | | $9,759.36 |
| | 03/01/2010 | | $9,378.84 |
| | 09/01/2010 | | $4,802.16 |
| Late Charges: | 07/01/2009 | | $102.24 |
| | 09/01/2009 | | $275.10 |
| | 03/01/2010 | | $256.08 |
| | 09/01/2010 | | $89.12 |
| Other Charges: | Uncollected Late Charges: | | $0.00 |
| | Uncollected Costs: | | $262.50 |
| | Partial Payment Balance: | | ($1,205.06) |
| | | TOTAL DUE: | $27,184.02 |

YOU HAVE FAILED TO TAKE THE FOLLOWING ACTION (Do not use if not applicable)

**HOW TO CURE THE DEFAULT** - You may cure the default within **THIRTY (30) DAYS** of the date of this notice **BY PAYING THE**

BAC Home Loans Servicing, LP is a subsidiary of Bank of America, N.A.

E-mail use: Providing your e-mail address below will allow us to send you information on your account.
Account Number:
Charles Benner E-mail address:

How we post your payments: All accepted payments of principal and interest will be applied to the longest outstanding installment due, unless otherwise expressly prohibited or limited by law. If you submit an amount in addition to your scheduled monthly amount, we will apply your payments as follows:  (i) to outstanding monthly payments of principal and interest, (ii) escrow deficiencies, (iii) late charges and other amounts you owe in connection with your loan and (iv) to reduce the outstanding principal balance of your loan. Please specify if you want an additional amount applied to future payments, rather than principal reduction.

Postdated checks:  Postdated checks will be processed on the date received unless a loan counselor agrees to honor the date written on the check as a condition of a repayment plan.

*REDACTED*

**TOTAL AMOUNT PAST DUE TO THE LENDER, WHICH IS $27,184.02** PLUS ANY MORTGAGE PAYMENTS AND LATE CHARGES WHICH BECOME DUE DURING THE THIRTY (30) DAY PERIOD.

Payments must be made either by cashier's check, certified check or money order made payable and sent to:

BAC Home Loans Servicing, LP at P.O. Box 15222, Wilmington, DE  19886-5222.

You can cure any other default by taking the following action within THIRTY (30) DAYS of the date of this letter. (Do not use if not applicable)

**IF YOU DO NOT CURE THE DEFAULT** - If you do not cure the default within THIRTY (30) DAYS of the date of this Notice, **the lender intends to exercise its rights to accelerate the mortgage debt.** This means that the entire outstanding balance of this debt will be considered due immediately and you may lose the chance to pay the mortgage in monthly installments. If full payment of the total amount past due is not made within THIRTY (30) DAYS, the lender also intends to instruct its attorneys to start legal action to **foreclose upon your mortgaged property.**

**IF THE MORTGAGE IS FORECLOSED UPON** - The mortgaged property will be sold by the Sheriff to pay off the mortgage debt. If the lender refers your case to its attorneys, but you cure the delinquency before the lender begins legal proceedings against you, you will still be required to pay the reasonable attorney's fees that were actually incurred, up to $50.00. However, if legal proceedings are started against you, you will have to pay all reasonable attorney's fees actually incurred by the lender even if they exceed $50.00. Any attorney's fees will be added to the amount you owe the lender, which may also include other reasonable costs. **If you cure the default within the THIRTY (30) DAY period, you will not be required to pay attorney's fees.**

**OTHER LENDER REMEDIES** - The lender may also sue you personally for the unpaid principal balance and all other sums due under the mortgage.

**RIGHT TO CURE THE DEFAULT PRIOR TO SHERIFF'S SALE** - If you have not cured the default within the THIRTY (30) DAY period and foreclosure proceedings have begun, you still have the right to cure the default and prevent the sale at any time up to one hour before the Sheriff's Sale. You may do so by paying the total amount then past due, plus any late or other charges then due, reasonable attorney's fees and costs connected with the foreclosure sale and any other costs connected with the Sheriff's Sale as specified in writing by the lender and by performing any other requirements under the mortgage. **Curing your default in the manner set forth in this notice will restore your mortgage to the same position as if you had never defaulted**

**EARLIEST POSSIBLE SHERIFF'S SALE DATE** - It is estimated that the earliest date that such a Sheriff's Sale of the mortgage property could be held would be **approximately six (6) months from the date of this Notice.** A notice of the actual date of the Sheriff's Sale will be sent to you before the sale. Of course, the amount needed to cure the default will increase the longer you wait. You may find out at any time exactly what the required payment or action will be by contacting the lender.

**HOW TO CONTACT THE LENDER:**

| | |
|---|---|
| **Name of Lender:** | **_BAC Home Loans Servicing, LP_** |
| **Address:** | **_P. O. Box 660694 Dallas, TX 75266-0694_** |
| **Phone Number:** | **_1-800-669-0102_** |
| **Fax Number:** | **_1-817-230-6811_** |
| **Contact Person:** | **_MS TX2-977-01-13_**<br>**_Attention:  Loan Counselor_** |
| **Email Address:** | To ensure secure email communications please log on to the BAC Home Loans Servicing, LP Website at www.bankofamerica.com and email us by navigating through the Customer Service link provided |

**EFFECT OF SHERIFF'S SALE** - You should realize that a Sheriff's Sale will end your ownership of the mortgaged property and your right to occupy it. If you continue to live in the property after the Sheriff's sale, a lawsuit to remove you and your furnishings and other belongings could be started by the lender at any time.

**ASSUMPTION OF MORTGAGE** - You may sell or transfer your home to a buyer or transferee who will assume the mortgage debt, provided that all the outstanding payments, charges and attorney's fees and costs are paid prior to or at the sale and that the other requirements of the mortgage are satisfied.

### YOU MAY ALSO HAVE THE RIGHT:

TO SELL THE PROPERTY TO OBTAIN MONEY TO PAY OFF THE MORTGAGE DEBT OR TO BORROW MONEY FROM ANOTHER LENDING INSTITUTION TO PAY OFF THIS DEBT.

TO HAVE THIS DEFAULT CURED BY ANY THIRD PARTY ACTING ON YOUR BEHALF.

TO HAVE THE MORTGAGE RESTORED TO THE SAME POSITION AS IF NO DEFAULT HAD OCCURRED, IF YOU CURE THE DEFAULT. (HOWEVER, YOU DO NOT HAVE THIS RIGHT TO CURE YOUR DEFAULT MORE THAN THREE TIMES IN ANY CALENDAR YEAR.)

TO ASSERT THE NONEXISTENCE OF A DEFAULT IN ANY FORECLOSURE PROCEEDING OR ANY OTHER LAWSUIT INSTITUTED UNDER THE MORTGAGE DOCUMENTS.

TO ASSERT ANY OTHER DEFENSE YOU BELIEVE YOU MAY HAVE TO SUCH ACTION BY THE LENDER.

TO SEEK PROTECTION UNDER THE FEDERAL BANKRUPTCY LAW.

Your loan is in default. Pursuant to your loan documents, BAC Home Loans Servicing, LP may, enter upon and conduct an inspection of your property. The purposes of such an inspection are to (i) observe the physical condition of your property, (ii) verify that the property is occupied and/or (iii) determine the identity of the occupant. If you do not cure the default prior to the inspection, other actions to protect the mortgagee's interest in the property (including, but not limited to, winterization, securing the property, and valuation services) may be taken. **The costs of the above-described inspections and property preservation efforts will be charged to your account as provided in your security instrument.**



2242368314

If you are unable to cure the default on or before December 8, 2010, BAC Home Loans Servicing, LP wants you to be aware of various options that may be available to you through BAC Home Loans Servicing, LP to prevent a foreclosure sale of your property. For example:

- Repayment Plan: It is possible that you may be eligible for some form of payment assistance through BAC Home Loans Servicing, LP. Our basic plan requires that BAC Home Loans Servicing, LP receive, up front, at least ½ of the amount necessary to bring the account current, and that the balance of the overdue amount be paid, along with the regular monthly payment, over a defined period of time. Other repayment plans also are available.

- Loan Modification: Or, it is possible that the regular monthly payments can be lowered through a modification of the loan by reducing the interest rate and then adding the delinquent payments to the current loan balance. This foreclosure alternative, however, is limited to certain loan types.

- Sale of Your Property: Or, if you are willing to sell your home in order to avoid foreclosure, it is possible that the sale of your home can be approved through BAC Home Loans Servicing, LP even if your home is worth less than what is owed on it.

- Deed-in-Lieu: Or, if your property is free from other liens or encumbrances, and if the default is due to a serious financial hardship which is beyond your control, you may be eligible to deed your property directly to the Noteholder and avoid the foreclosure sale.

If you are interested in discussing any of these foreclosure alternatives with BAC Home Loans Servicing, LP, you must contact us immediately. If you request assistance, BAC Home Loans Servicing, LP will need to evaluate whether that assistance will be extended to you. In the meantime, BAC Home Loans Servicing, LP will pursue all of its rights and remedies under the loan documents and as permitted by law, unless it agrees otherwise in writing. Failure to bring your loan current or to enter into a written agreement by December 8, 2010 as outlined above will result in the acceleration of your debt.

Time is of the essence. If you have any questions concerning this notice, please contact Loan Counseling Center immediately at 1-800-669-0102.

BAC Home Loans Servicing, LP is a subsidiary of Bank of America, N.A.

2242368314

| | | | | | | |
|---|---|---|---|---|---|---|
| Monthly Charges: | 07/01/2009 | - | 08/31/2009 | @ | $1,731.84 | $3,463.68 |
| | 09/01/2009 | - | 02/28/2010 | @ | $1,626.56 | $9,759.36 |
| | 03/01/2010 | - | 08/31/2010 | @ | $1,563.14 | $9,378.84 |
| | 09/01/2010 | - | 11/30/2010 | @ | $1,600.72 | $4,802.16 |
| Late Charges: | 07/01/2009 | - | 08/31/2009 | @ | $51.12 | $102.24 |
| | 09/01/2009 | - | 02/28/2010 | @ | $45.85 | $275.10 |
| | 03/01/2010 | - | 08/31/2010 | @ | $42.68 | $256.08 |
| | 09/01/2010 | - | 10/31/2010 | @ | $44.56 | $89.12 |

| | | |
|---|---|---|
| Other Charges: | Uncollected Late Charges: | $0.00 |
| | INSPECTION-OCCUPIED | $262.50 |
| | Partial Payment Balance: | ($1,205.06) |
| | **TOTAL DUE:** | **$27,184.02** |

CONSUMER CREDIT COUNSELING AGENCIES SERVING YOUR COUNTY

PHILADELPHIA COUNTY

CCCS of Delaware Valley
1608 Walnut Street
10th Floor
Philadelphia, PA 19107
215.563.5665

Diversified Community Services
Dixon House
1920 South 20th Street
Philadelphia, PA 19145
215.336.3511

Urban League of Philadelphia
1818 Market Street
20th Floor
Philadelphia, PA 19103
215.985.3220

HACE
167 W. Allegheny Avenue
2nd Fl
Philadelphia, PA 19140
215.426.8025

CCCS of Delaware Valley
Catholic Social Services Building
7340 Jackson Street
Philadelphia, PA 19136
215.563.5665

Germantown Settlement
5538 Wayne Avenue
Bldg C
Philadelphia, PA 19144
215.849.3104

Chester Community Improvement Project
412 Avenue of the States
PO Box 541
Chester, PA 19016
610.876.8663

Advocates for Financial Independence
1806 South Broad Street
Suite 1 B
Philadelphia, PA 19145
215.389.2810

Liberty Resources
714 Market Street
Suite 100
Philadelphia, PA 19106
215.634.2000

The Partnership CDC
4020 Market Street
Suite 100
Philadelphia, PA 19104
215.662.1612

Mt. Airy, USA
6703 Germantown Avenue
Suite 200
Philadelphia, PA 19119
215.844.6021

American Credit Counseling Institute
530 West Street Road
Suite 201
Warminster, PA 18974
215.444.9429
888.212.6741

CCCS of Delaware Valley
One Cherry Hill
Suite 215
Cherry Hill, PA 08002
215.563.5665

Opportunity Inc.
Two Bala Plaza
Suite 300
Philadelphia, PA 19004
610.660.6687

Phila Council For Community Advmnt
100 North 17th Street
Suite 600
Philadelphia, PA 19103
215.567.7803
800.930.4663

Housing Association of Delaware Valley
1500 Walnut Street
Suite 601
Philadelphia, PA 19102
215.545.6010

American Financial Counseling Services
175 Trafford Avenue
Suite One
Wayne, PA 19087
267.228.7903
800.490.3039

Acorn Housing Corporation
846 North Broad Street
Philadelphia, PA 19130
215.765.1221

American Financial Counseling Services
1917 Welsh Road
Philadelphia, PA 19115
267.228.7903

APM
2147 North Sixth Street
Philadelphia, PA 19122
215.235.6788

Carroll Park Community Council, Inc.
5218 Master Street
Philadelphia, PA 19131
215.877.1157

Centro Pedro Claver, Inc.
627 West Erie Avenue
Philadelphia, PA 19140
215.227.7111

Congreso
216 West Somerset Street
Philadelphia, PA 19133
215.763.8870

Council of Spanish Speaking Organization
705-09 North Franklin Street
Philadelphia, PA 19123
215.627.3100

Esperanza
4261 North 5th Street
Philadelphia, PA 19140
215.324.0746

FOB CDC
1201 West Olney Avenue
Philadelphia, PA 19141
215.549.8755

Hispanic Alliance for Community
Advancement
2740 North Front Street
Philadelphia, PA 19133
215.667.8932

Housing Association of Delaware Valley
658 North Watts Street
Philadelphia, PA 19123
215. 978.0224

Intercultural Family Services, Inc.
4225 Chestnut Street
Philadelphia, PA 19104
215.386.1298

Korean Community Development Services
Center
6055 North 5th Street
Philadelphia, PA 19120
215.276.8830

New Kensington Community Development
Corp
2515 Frankford Avenue
Philadelphia, PA 19125
215.427.0350

Northwest Counseling Service
5001 North Broad Street
Philadelphia, PA 19141
215.324.7500

Philadelphia Senior Center
509 South Broad Street
Philadelphia, PA 19147
215.546.5879

South Philadelphia H.O.M.E.S.
1444 Point Breeze Avenue
Philadelphia, PA 19146
215.334.4430

Southwest Community Development
Corporation
6328 Paschall Avenue
Philadelphia, PA 19142
215.729.0800

United Communities Southeast Philadelphia
2029 South 8th Street
Philadelphia, PA 19148
215.467.8700

West Oak Lane CDC
6259 Limekiln Pike
Philadelphia, PA 19141
215.224.0880

# EXHIBIT B



**Bank of America**

**Home Loans**
PO Box 9048
Temecula, CA 92589-9048



PRESORT
First-Class Mail
U.S. Postage and
Fees Paid
WSO

2243513647

*Send Payments to:*
P.O. Box 15222
Wilmington, DE 19886-5222

*Send Correspondence to:*
PO Box 5170, MS SV314B
Simi Valley, CA 93065

20101216-7

Charles Benner
3317 Gurley Rd
Philadelphia, PA 19154-1501

To: Noah Axler
215-525-9770

BLQPA1 11722/12256  03/08/2010

**Bank of America**
**Home Loans**
P.O. Box 660694
Dallas, TX 75266-0694

*Send Payments to:*
*P.O. Box 15222*
*Wilmington, DE 19886-5222*

December 16, 2010

**Account No.:** ▮▮▮▮
**Property Address:**
3317 Gurley Rd
Philadelphia, PA 19154-1601

Charles Benner
3317 Gurley Rd
Philadelphia, PA 19154-1501

**Current Servicer:**
BAC Home Loans Servicing, LP

# ACT 91 NOTICE
# TAKE ACTION TO SAVE
# YOUR HOME FROM
# FORECLOSURE

This is an official notice that the mortgage on your home is in default, and the lender intends to foreclose. Specific information about the nature of the default is provided in the attached pages.

The HOMEOWNER'S EMERGENCY MORTGAGE ASSISTANCE PROGRAM (HEMAP) may be able to help to save your home. This Notice explains how the program works.

To see if HEMAP can help, you must MEET WITH A CONSUMER CREDIT COUNSELING AGENCY WITHIN 30 DAYS OF THE DATE OF THIS NOTICE. Take this Notice with you when you meet with the Counseling Agency.

The names, addresses and phone numbers of Consumer Credit Counseling Agencies serving your County are listed at the end of this Notice. If you have any questions, you may call the Pennsylvania Housing Finance Agency toll free at 1-800-342-2397. (Persons with impaired hearing can call 1-717-780-1869).

This Notice contains important legal information. If you have any questions, representatives at the Consumer Credit Counseling Agency may be able to help explain it. You may also want to contact an attorney in your area. The local bar association may be able to help you find a lawyer.

LA NOTIFICACIÓN EN ADJUNTO ES DE SUMA IMPORTANCIA, PUES AFECTA SU DERECHO A CONTINUAR VIVIENDO EN SU CASA. SI NO COMPRENDE EL CONTENIDO DE ESTA NOTIFICACIÓN OBTENGA UNA TRADUCCIÓN INMEDIATAMENTE LLAMANDO ESTA AGENCIA (PENNSYLVANIA HOUSING FINANCE AGENCY) SIN CARGOS AL NÚMERO MENCIONADO ARRIBA. PUEDE SER ELEGIBLE PARA UN PRÉSTAMO POR EL PROGRAMA LLAMADO "HOMEOWNER'S EMERGENCY MORTGAGE ASSISTANCE PROGRAM" EL CUAL PUEDE SALVAR SU CASA DE LA PERDIDA DEL DERECHO A REDIMIR SU HIPOTECA.

HOMEOWNER'S NAME(S):   **Charles Benner**
PROPERTY ADDRESS:      **3317 Gurley Rd**
                       **Philadelphia, PA  19154-1501**
LOAN ACCT. NO.:
ORIGINAL LENDER:       ▮▮▮▮
CURRENT LENDER/SERVICER:   **BAC Home Loans Servicing, LP, a subsidiary of Bank of America, N.A.**

## HOMEOWNER'S EMERGENCY MORTGAGE ASSISTANCE PROGRAM

YOU MAY BE ELIGIBLE FOR FINANCIAL ASSISTANCE WHICH CAN SAVE YOUR HOME FROM FORECLOSURE AND HELP YOU MAKE FUTURE MORTGAGE PAYMENTS.

This communication is from BAC Home Loans Servicing, LP, the Bank of America company that services your home loan.

---

*Please write your account number on all checks and correspondence.*
We may charge you a fee (of up to $40.00) for any payment returned or rejected by your financial institution, subject to applicable law.   BLOPA1 11722h122s8 03/06/2010

**Payment Instructions:**
- Make your check payable to BAC Home Loans Servicing, LP
- Don't send cash
- Please include coupon with your payment

For all full month payment periods, interest is calculated on a monthly basis. Accordingly, interest for all full months, including February, is calculated as 30/360 of annual interest, irrespective of the actual number of days in the month. For partial months, interest is calculated daily on the basis of a 365 day year.



Account Number: ▮▮▮▮
Charles Benner
3317 Gurley Rd
Philadelphia, PA 19154-1501

BLOPA1

BAC Home Loans Servicing, LP
PO BOX 15222
Wilmington, DE 19886-5222
1-800-669-0102

Balance Due for charges listed above: $27,251.32 as of December 16, 2010.
*Please update e-mail information on the reverse side of this coupon.*

| Additional Principal | |
| Additional Escrow | |
| Check Total | |

0229576152000027251320027251 32

*REDACTED*

⑈586990058⑈ 229576 15⑈'

00-82-10389  04-2009  (Former SS30)

**HOW TO CURE THE DEFAULT** - You may cure the default within THIRTY (30) DAYS of the date of this notice **BY PAYING THE TOTAL AMOUNT PAST DUE TO THE LENDER, WHICH IS $27,251.32 PLUS ANY MORTGAGE PAYMENTS AND LATE CHARGES WHICH BECOME DUE DURING THE THIRTY (30) DAY PERIOD.**

Payments must be made either by cashier's check, certified check or money order made payable and sent to:

BAC Home Loans Servicing, LP at P.O. Box 15222, Wilmington, DE 19886-5222.

You can cure any other default by taking the following action within THIRTY (30) DAYS of the date of this letter. (Do not use if applicable)

**IF YOU DO NOT CURE THE DEFAULT** - If you do not cure the default within THIRTY (30) DAYS of the date of this Notice, **the lender intends to exercise its rights to accelerate the mortgage debt.** This means that the entire outstanding balance of this debt will be considered due immediately and you may lose the chance to pay the mortgage in monthly installments. If full payment of the total amount past due is not made within THIRTY (30) DAYS, the lender also intends to instruct its attorneys to start legal action to **foreclose upon your mortgaged property.**

**IF THE MORTGAGE IS FORECLOSED UPON** - The mortgaged property will be sold by the Sheriff to pay off the mortgage debt. If the lender refers your case to its attorneys, but you cure the delinquency before the lender begins legal proceedings against you, you will still be required to pay the reasonable attorney's fees that were actually incurred, up to $50.00. However, if legal proceedings are started against you, you will have to pay all reasonable attorney's fees actually incurred by the lender even if they exceed $50.00. Any attorney's fees will be added to the amount you owe the lender, which may also include other reasonable costs. **If you cure the default within the THIRTY (30) DAY period, you will not be required to pay attorney's fees.**

**OTHER LENDER REMEDIES** - The lender may also sue you personally for the unpaid principal balance and all other sums due under the mortgage.

**RIGHT TO CURE THE DEFAULT PRIOR TO SHERIFF'S SALE** - If you have not cured the default within the THIRTY (30) DAY period and foreclosure proceedings have begun, you still have the right to cure the default and prevent the sale at any time up to one hour before the Sheriff's Sale. You may do so by paying the total amount then past due, plus any late or other charges then due, reasonable attorney's fees and costs connected with the foreclosure sale and any other costs connected with the Sheriff's Sale as specified in writing by the lender and by performing any other requirements under the mortgage. **Curing your default in the manner set forth in this notice will restore your mortgage to the same position as if you had never defaulted**

**EARLIEST POSSIBLE SHERIFF'S SALE DATE** - It is estimated that the earliest date that such a Sheriff's Sale of the mortgage property could be held would be **approximately six (6) months from the date of this Notice.** A notice of the actual date of the Sheriff's Sale will be sent to you before the sale. Of course, the amount needed to cure the default will increase the longer you wait. You may find out at any time exactly what the required payment or action will be by contacting the lender.

**HOW TO CONTACT THE LENDER:**

| | |
|---|---|
| Name of Lender: | *BAC Home Loans Servicing, LP* |
| Address: | *P. O. Box 660694 Dallas, TX 75266-0694* |
| Phone Number: | *1-800-669-0102* |
| Fax Number: | *1-817-230-6811* |
| Contact Person: | *MS TX2-977-01-13* |
| | *Attention: Loan Counselor* |

We are currently developing a process to ensure secure email communications for your Home Retention inquiries. In the interim, please contact us at the telephone number or address provided.

**EFFECT OF SHERIFF'S SALE** - You should realize that a Sheriff's Sale will end your ownership of the mortgaged property and your right to occupy it. If you continue to live in the property after the Sheriff's sale, a lawsuit to remove you and your furnishings and other belongings could be started by the lender at any time.

**ASSUMPTION OF MORTGAGE** - You may sell or transfer your home to a buyer or transferee who will assume the mortgage debt, provided that all the outstanding payments, charges and attorney's fees and costs are paid prior to or at the sale and that the other requirements of the mortgage are satisfied.

## YOU MAY ALSO HAVE THE RIGHT:

TO SELL THE PROPERTY TO OBTAIN MONEY TO PAY OFF THE MORTGAGE DEBT OR TO BORROW MONEY FROM ANOTHER LENDING INSTITUTION TO PAY OFF THIS DEBT.

TO HAVE THIS DEFAULT CURED BY ANY THIRD PARTY ACTING ON YOUR BEHALF.

TO HAVE THE MORTGAGE RESTORED TO THE SAME POSITION AS IF NO DEFAULT HAD OCCURRED, IF YOU CURE THE DEFAULT. (HOWEVER, YOU DO NOT HAVE THIS RIGHT TO CURE YOUR DEFAULT MORE THAN THREE TIMES IN ANY CALENDAR YEAR.)

TO ASSERT THE NONEXISTENCE OF A DEFAULT IN ANY FORECLOSURE PROCEEDING OR ANY OTHER LAWSUIT INSTITUTED UNDER THE MORTGAGE DOCUMENTS.

TO ASSERT ANY OTHER DEFENSE YOU BELIEVE YOU MAY HAVE TO SUCH ACTION BY THE LENDER.

TO SEEK PROTECTION UNDER THE FEDERAL BANKRUPTCY LAW.

Your loan is in default. Pursuant to your loan documents, BAC Home Loans Servicing, LP may, enter upon and conduct an inspection of your property. The purposes of such an inspection are to (i) observe the physical condition of your property, (ii) verify that the property is occupied and/or (iii) determine the identity of the occupant. If you do not cure the default prior to the inspection, other actions to protect the mortgagee's interest in the property (including, but not limited to, winterization, securing the property, and valuation services) may be taken. **The costs of the above-described inspections and property preservation efforts will be charged to your account as provided in your security instrument.**



This communication is from BAC Home Loans Servicing, LP, the Bank of America company that services your home loan.

| Monthly Charges: | | | | | |
|---|---|---|---|---|---|
| | 08/01/2009 | - | 08/31/2009 | @ | $1,731.84 | $1,731.84 |
| | 09/01/2009 | - | 02/28/2010 | @ | $1,626.56 | $9,759.36 |
| | 03/01/2010 | - | 08/31/2010 | @ | $1,563.14 | $9,378.84 |
| | 09/01/2010 | - | 11/30/2010 | @ | $1,600.72 | $4,802.16 |
| | 12/01/2010 | - | 12/31/2010 | @ | $1,122.74 | $1,122.74 |

| Late Charges: | | | | | |
|---|---|---|---|---|---|
| | 08/01/2009 | - | 08/31/2009 | @ | $51.12 | $51.12 |
| | 09/01/2009 | - | 02/28/2010 | @ | $45.85 | $275.10 |
| | 03/01/2010 | - | 08/31/2010 | @ | $42.68 | $256.08 |
| | 09/01/2010 | - | 11/30/2010 | @ | $44.56 | $133.68 |

| Other Charges: | Uncollected Late Charges: | $51.12 |
|---|---|---|
| | INSPECTION-OCCUPIED | $262.50 |
| | Partial Payment Balance: | ($573.22) |

**TOTAL DUE:**                    **$27,251.32**

This communication is from BAC Home Loans Servicing, LP, the Bank of America company that services your home loan.

**IF YOU COMPLY WITH THE PROVISIONS OF THE HOMEOWNER'S EMERGENCY MORTGAGE ASSISTANCE ACT OF 1983 (THE "ACT"), YOU MAY BE ELIGIBLE FOR EMERGENCY MORTGAGE ASSISTANCE:**

**IF YOUR DEFAULT HAS BEEN CAUSED BY CIRCUMSTANCES BEYOND YOUR CONTROL,**

**IF YOU HAVE A REASONABLE PROSPECT OF BEING ABLE TO PAY YOUR MORTGAGE PAYMENTS, AND**

**IF YOU MEET OTHER ELIGIBILITY REQUIREMENTS ESTABLISHED BY THE PENNSYLVANIA HOUSING FINANCE AGENCY.**

**TEMPORARY STAY OF FORECLOSURE** - Under the Act, you are entitled to a temporary stay of foreclosure on your mortgage for Thirty (30) days from the date of this Notice.  During that time you must arrange and attend a "face-to-face" meeting with one of the consumer credit counseling agencies listed at the end of this Notice.  **THIS MEETING MUST OCCUR WITHIN THE NEXT THIRTY (30) DAYS.  IF YOU DO NOT APPLY FOR EMERGENCY MORTGAGE ASSISTANCE, YOU MUST BRING YOUR MORTGAGE UP TO DATE.  THE PART OF THIS NOTICE CALLED "HOW TO CURE YOUR MORTGAGE DEFAULT" EXPLAINS HOW TO BRING YOUR MORTGAGE UP TO DATE.**

**CONSUMER CREDIT COUNSELING AGENCIES** - If you meet with one of the consumer credit counseling agencies listed at the end of this notice, the lender may NOT take action against you for Thirty (30) days after the date of this meeting.  The names, addresses and telephone numbers of designated consumer credit counseling agencies for the county in which the property is located are set forth at the end of this Notice.  It is only necessary to schedule one face-to-face meeting. Advise your lender immediately of your intentions.

**APPLICATION FOR MORTGAGE ASSISTANCE** - Your mortgage is in default for the reasons set forth later in this Notice (see following pages for specific information about the nature of your default.) If you have tried and are unable to resolve this problem with the lender, you have the right to apply for financial assistance from the Homeowner's Emergency Mortgage Assistance Program. To do so, you must fill out, sign and file a completed Homeowner's Emergency Assistance Program Application with one of the designated consumer credit counseling agencies listed at the end of this Notice.  Only consumer credit counseling agencies have applications for the program and they will assist you in submitting a complete application to the Pennsylvania Housing Finance Agency.  Your application MUST be filed or postmarked within Thirty (30) days of your face-to-face meeting.

**YOU MUST FILE YOUR APPLICATION PROMPTLY. IF YOU FAIL TO DO SO OR IF YOU DO NOT FOLLOW THE OTHER TIME PERIODS SET FORTH IN THIS LETTER, FORECLOSURE MAY PROCEED AGAINST YOUR HOME IMMEDIATELY AND YOUR APPLICATION FOR MORTGAGE ASSISTANCE WILL BE DENIED.**

**AGENCY ACTION** - Available funds for emergency mortgage assistance are very limited.  They will be disbursed by the Agency under the eligibility criteria established by the Act.  The Pennsylvania Housing Finance Agency has sixty (60) days to make a decision after it receives your application.  During that time, no foreclosure proceedings will be pursued against you if you have met the time requirements set forth above.  You will be notified directly by the Pennsylvania Housing Finance Agency of its decision on your application.

**NOTE:  IF YOU ARE CURRENTLY PROTECTED BY THE FILING OF A PETITION IN BANKRUPTCY, THE FOLLOWING PART OF THIS NOTICE IS FOR INFORMATION PURPOSES ONLY AND SHOULD NOT BE CONSIDERED AS AN ATTEMPT TO COLLECT THE DEBT.**

**(If you have filed bankruptcy you can still apply for Emergency Mortgage Assistance.)**

**NATURE OF THE DEFAULT -** The MORTGAGE debt held by the above lender on your property located at:

3317 Gurley Rd Philadelphia, PA  19154-1501

IS SERIOUSLY IN DEFAULT because

**YOU HAVE NOT MADE MONTHLY MORTGAGE PAYMENTS for the following months and the following amounts are now past due:**

| Monthly Charges: | 08/01/2009 | $1,731.84 |
| | 09/01/2009 | $9,759.36 |
| | 03/01/2010 | $9,378.84 |
| | 09/01/2010 | $4,802.16 |
| | 12/01/2010 | $1,122.74 |
| Late Charges: | 08/01/2009 | $51.12 |
| | 09/01/2009 | $275.10 |
| | 03/01/2010 | $256.08 |
| | 09/01/2010 | $133.68 |
| Other Charges: | Uncollected Late Charges: | $51.12 |
| | Uncollected Costs: | $262.50 |
| | Partial Payment Balance: | ($573.22) |
| | **TOTAL DUE:** | **$27,251.32** |

YOU HAVE FAILED TO TAKE THE FOLLOWING ACTION  (Do not use if not applicable)

This communication is from BAC Home Loans Servicing, LP, the Bank of America company that services your home loan.

E-mail use: Providing your e-mail address below will allow us to send you information on your account.
Account Number: ▇▇▇▇
Charles Benner E-mail address:

**How we post your payments:** All accepted payments of principal and interest will be applied to the longest outstanding installment due, unless otherwise expressly prohibited or limited by law.  If you submit an amount in addition to your scheduled monthly amount, we will apply your payments as follows:  (i) to outstanding monthly payments of principal and interest, (ii) escrow deficiencies, (iii) late charges and other amounts you owe in connection with your loan and (iv) to reduce the outstanding principal balance of your loan.  Please specify if you want an additional amount applied to future payments, rather than principal reduction.

**Postdated checks:** Postdated checks will be processed on the date received unless a loan counselor agrees to honor the date written on the check as a condition of a repayment plan.

*REDACTED*

If you are unable to cure the default on or before January 15, 2011, BAC Home Loans Servicing, LP wants you to be aware of various options that may be available to you through BAC Home Loans Servicing, LP to prevent a foreclosure sale of your property. For example:

- Repayment Plan: It is possible that you may be eligible for some form of payment assistance through BAC Home Loans Servicing, LP. Our basic plan requires that BAC Home Loans Servicing, LP receive, up front, at least ½ of the amount necessary to bring the account current, and that the balance of the overdue amount be paid, along with the regular monthly payment, over a defined period of time. Other repayment plans also are available.

- Loan Modification: Or, it is possible that the regular monthly payments can be lowered through a modification of the loan by reducing the interest rate and then adding the delinquent payments to the current loan balance. This foreclosure alternative, however, is limited to certain loan types.

- Sale of Your Property: Or, if you are willing to sell your home in order to avoid foreclosure, it is possible that the sale of your home can be approved through BAC Home Loans Servicing, LP even if your home is worth less than what is owed on it.

- Deed-in-Lieu: Or, if your property is free from other liens or encumbrances, and if the default is due to a serious financial hardship which is beyond your control, you may be eligible to deed your property directly to the Noteholder and avoid the foreclosure sale.

If you are interested in discussing any of these foreclosure alternatives with BAC Home Loans Servicing, LP, you must contact us immediately. If you request assistance, BAC Home Loans Servicing, LP will need to evaluate whether that assistance will be extended to you. In the meantime, BAC Home Loans Servicing, LP will pursue all of its rights and remedies under the loan documents and as permitted by law, unless it agrees otherwise in writing. Failure to bring your loan current or to enter into a written agreement by January 15, 2011 as outlined above will result in the acceleration of your debt.

Time is of the essence. If you have any questions concerning this notice, please contact Loan Counseling Center immediately at 1-800-669-0102.

# EXHIBIT C

**Charles Benner**
**3317 Gurley Rd.**
**Philadelphia, PA  19154**

February 4, 2011

BAC Home Loans Servicing, LP
Attn Home Retention Division
100 Beacham Dr., Suite 104
Pittsburgh, PA  15205

   Re: <u>Loan</u>████

To Whom It May Concern:

   I write to reject Bank of America's offer of a loan modification dated January 25, 2011, regarding my Loan ████  Based on my prior full compliance with a trial plan agreement, I should have been given a modification under the federal Home Affordable Modification Program ("HAMP").  The loan modification you offered me is not a HAMP modification.

   Regarding your January 25, 2011 loan modification offer, please send me:  (1) the guidelines for the modification program under which you made the offer; and (2) the criteria used for limiting the offer to a variable rate modification.

   I also ask that you issue me the HAMP modification to which I am entitled or, at the very least, offer me a modification with a fixed interest rate.

   Sincerely,

Charles Benner

*REDACTED*

# EXHIBIT D

**Charles Benner**
**3317 Gurley Rd.**
**Philadelphia, PA  19154**

March 11, 2011

BAC Home Loans Servicing, LP
Attn Home Retention Division
100 Beacham Dr., Suite 104
Pittsburgh, PA  15205

      Re:  Loan ███████████

To Whom It May Concern:

      I write to inform you that I am represented by an attorney in matters regarding my mortgage loan, which is serviced by BAC Home Loans Servicing, LP.  His contact information is:

Noah Axler, Esquire
DONOVAN SEARLES & AXLER, LLC
1845 Walnut Street, Suite 1100
Philadelphia, PA  19103
(215) 732-6067

      Please direct any phone calls regarding my mortgage loan to Mr. Axler and cease making any calls to me regarding this mortgage loan.  However, I ask that you continue sending all bills and written correspondence to my address.

      Further, you have not responded to my February 4, 2011 letter, so I again ask that, regarding your January 25, 2011 loan modification offer, please send me:  (1) the guidelines for the modification program under which you made the offer; and (2) the criteria used for limiting the offer to a variable rate modification.

      In addition, please provide a written explanation of why you determined I was not eligible for a Home Affordable Modification Program ("HAMP") permanent modification after my previous servicer: (1) determined I was eligible for HAMP; and (2) entered into a HAMP Trial Period Plan with me under which I fully complied and have continued to make timely payments.

      Also please provide me an explanation of how you calculated the arrears set forth in the Pennsylvania Act 91 Notices you sent me, given that I have been paying my agreed upon trial payments continuously.  I am entitled to this itemization pursuant to 12 U.S.C. Section 2605 and

*REDACTED*

other applicable laws, and this letter is a Qualified Written Request pursuant to 12 U.S.C. Section 2605.

Sincerely,


Charles Benner

# EXHIBIT E

**Charles Benner**
**3317 Gurley Rd.**
**Philadelphia, PA  19154**

April 13, 2011

BAC Home Loans Servicing, LP
Attention:  Home Retention Division
100 Beacham Dr., Suite 104
Pittsburgh, PA  15205

      Re:  <u>Loan #</u>████████

To Whom It May Concern:

      I write to you for the third time relating to issues about my above-referenced loan.  On March 14, 2011, I sent you a letter requesting that all phone calls regarding my loan should be directed to my attorney, whose contact information is:

Noah Axler, Esquire
DONOVAN SEARLES & AXLER, LLC
1845 Walnut Street, Suite 1100
Philadelphia, PA  19103
(215) 732-6067

      You have ignored my request and I am still receiving several phone calls a day from BAC, which is causing me significant distress.

      Further, as I stated in my March 14, 2011 letter, you have not responded to my February 4, 2011 letter, in which I requested that you send me:  (1) the guidelines for the modification program under which you made your January 25, 2011 loan modification offer to me; and (2) the criteria used for limiting the January 25, 2011 offer to a variable rate modification.

      In addition, please provide a written explanation of why you determined I was not eligible for a Home Affordable Modification Program ("HAMP") permanent modification after my previous servicer: (1) determined I was eligible for HAMP; and (2) entered into a HAMP Trial Period Plan with me under which I fully complied and have continued to make timely payments.

      Also please provide me an explanation of how you calculated the arrears set forth in the Pennsylvania Act 91 Notices you sent me, given that I have been paying my agreed upon trial payments continuously.  I am entitled to this itemization pursuant to 12 U.S.C. Section 2605 and

*REDACTED*

other applicable laws, and this letter is a Qualified Written Request pursuant to 12 U.S.C. Section 2605.

Sincerely,


Charles Benner

# EXHIBIT F

# DONOVAN SEARLES, LLC
### ATTORNEYS AT LAW
1845 WALNUT STREET
SUITE 1100
PHILADELPHIA, PA 19103
(215) 732-6067
FAX (215) 732-8060
www.donovansearles.com

July 27, 2011

**Via Certified Mail, Return Receipt**
TransUnion Consumer Relations
P.O. Box 2000
Chester, PA  19022-2000

      **Re:**    **Charles N. Benner; TransUnion File No.** ▉▉▉▉▉▉

To Whom It May Concern:

I write to dispute certain information contained in the TransUnion credit report of my client, Charles N. Benner, and to request that the incorrect information be corrected or deleted, as set forth below.

The incorrect information is as follows and is circled on the copy of the report enclosed herewith:

On page two, an account with BAC Home Loans Servicing, LP is listed. The account lists a past due amount of $25,682 with a monthly payment of $1,626. Both of these amounts are overstated. Further, there is no notation that Mr. Benner's account was formerly owned by Wilshire Credit Corporation, a division of Bank of America, and that, while a customer of Wilshire, he participated in a trial period plan pursuant to the federal Home Affordable Modification Program. Mr. Benner's trial period plan under HAMP ran from December 2010 to February 2011, which is the date on which his account information with BAC was last updated. Accordingly, this listing should be corrected to reflect Mr. Benner's participation in the HAMP program for the months of December 2010, January 2011, and February 2011.

On page three, an account for NTL Recovery Agency ▉▉▉▉▉ is listed. This account concerns a medical bill that was not incurred by Mr. Benner, but rather by his father who is also named Charles Benner. This account should be deleted from Mr. Benner's credit report.

*REDACTED*

DONOVAN SEARLES, LLC

TransUnion Consumer Relations
July 27, 2011
Page 2

For purposes of this request, Mr. Benner's pertinent information is as follows:

Charles N. Benner
3317 Gurley Rd.
Philadelphia, PA 19154
Phone:  215.637.7386
Date of Birth: █████████
Social Security Number: ███████████
Unmarried

Very truly yours,

Noah Axler

Enclosure

*REDACTED*

# CREDIT

# REPORT

# REDACTED

# EXHIBIT G

# DONOVAN SEARLES, LLC

ATTORNEYS AT LAW
1845 WALNUT STREET
SUITE 1100
PHILADELPHIA, PA 19103
(215) 732-6067
FAX (215) 732-8060
www.donovansearles.com

July 29, 2011

**Via Certified Mail, Return Receipt**
Experian
NCAC
P.O. Box 9701
Allen, TX 75013

      Re:    **Charles N. Benner; Experian File No. ▮▮▮▮▮▮**

To Whom It May Concern:

I write to dispute certain information contained in the Experian credit report of my client, Charles N. Benner, and to request that the incorrect information be corrected or deleted, as set forth below.

The incorrect information is as follows and is circled on the copy of the report enclosed herewith:

On page three, an account with BAC Home Loans/Countrywide is listed. The account lists a past due amount of $26,226 with a monthly payment of $1,626. Both of these amounts are overstated. Further, there is no notation that Mr. Benner's account was formerly owned by Wilshire Credit Corporation, a division of Bank of America, and that, while a customer of Wilshire, he participated in a trial period plan pursuant to the federal Home Affordable Modification Program. Mr. Benner's trial period plan under HAMP ran from December 2010 to February 2011, which is the date on which his account information with BAC was last updated. Accordingly, this listing should be corrected to reflect Mr. Benner's participation in the HAMP program for the months of December 2010, January 2011, and February 2011.

On page five, an account for National Recovery Agency, ▮▮▮▮▮ is listed. This account concerns a medical bill that was not incurred by Mr. Benner, but rather by his father who is also named Charles Benner. This account should be deleted from Mr. Benner's credit report.

*REDACTED*

DONOVAN SEARLES, LLC

Experian
July 29, 2011
Page 2

For purposes of this request, Mr. Benner's pertinent information is as follows:

Charles N. Benner
3317 Gurley Rd.
Philadelphia, PA 19154
Phone:  215.637.7386
Date of Birth: █████████
Social Security Number: █████████
Unmarried

Very truly yours,

Noah Axler

Enclosure

*REDACTED*

# CREDIT REPORT REDACTED

# EXHIBIT H

# DONOVAN SEARLES, LLC
### ATTORNEYS AT LAW
1845 WALNUT STREET
SUITE 1100
PHILADELPHIA, PA 19103
(215) 732-6067
FAX (215) 732-8060
www.donovansearles.com

August 9, 2011

**Via Certified Mail, Return Receipt**
Equifax Information Services LLC
P.O. Box 105167
Atlanta, GA  30348

Re:     **Charles N. Benner; Equifax Confirmation No.** ██████

To Whom It May Concern:

I write to dispute certain information contained in the Equifax credit report of my client, Charles N. Benner, and to request that the incorrect information be corrected or deleted, as set forth below.

The incorrect information is as follows and is circled on the copy of the report enclosed herewith:

On pages two and three, an account with BAC Home Loans/Countrywide is listed.  The account lists a past due amount of $26,226  with a monthly payment of $1,626.  Both of these amounts are overstated.  Further, there is no notation that Mr. Benner's account was formerly owned by Wilshire Credit Corporation, a division of Bank of America, and that, while a customer of Wilshire, he participated in a trial period plan pursuant to the federal Home Affordable Modification Program.  Mr. Benner's trial period plan under HAMP ran from December 2010 to February 2011, which is the date on which his account information with BAC was last updated.  Accordingly, this listing should be corrected to reflect Mr. Benner's participation in the HAMP program for the months of December 2010, January 2011, and February 2011.

The same incorrect information also appears at pages 11 and 12 of the credit report.

*REDACTED*

DONOVAN SEARLES, LLC

Equifax
August 9, 2011
Page 2

For purposes of this request, Mr. Benner's pertinent information is as follows:

Charles N. Benner
3317 Gurley Rd.
Philadelphia, PA 19154
Phone:  215.637.7386
Date of Birth: ███████████
Social Security Number: ████████████
Unmarried

Very truly yours,

Noah Axler

Enclosure

*REDACTED*

# CREDIT

# REPORT

# REDACTED