IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHARLES N. BENNER, on behalf of
himself and all others similarly situated,

Plaintiff,

v.

BANK OF AMERICA, N.A., et al.,

Defendants.

CIVIL ACTION
NO. 11-6574

## OPINION

**Slomsky, J.**                                        **January 7, 2013**

### TABLE OF CONTENTS

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     A.   Plaintiff's Mortgage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

     B.   Defendant's Loan Servicing Practices . . . . . . . . . . . . . . . . . . . . . . . . . . 7

     C.   Defendant's Pre-Foreclosure Notices . . . . . . . . . . . . . . . . . . . . . . . . . . 8

     D.   Defendant's Monthly Mortgage Statement and Loan Modification Offer . . . . . . . 9

     E.   Plaintiff's Requests for Mortgage Information . . . . . . . . . . . . . . . . . . . . . . 10

III. LEGAL STANDARD FOR MOTION TO DISMISS . . . . . . . . . . . . . . . . . . . . . . . . . 12

IV.  DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
     A.   Legality of Property Inspection Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
          1.   Fair Debt Collection Practices Act, 15 U.S.C. § 1692e and § 1692f . . . 14
               a.   Pre-Foreclosure Notices and Mortgage Statement — § 1692e . . 15
               b.   Loan Servicing Practices — § 1692f . . . . . . . . . . . . . . . . . . . . 21

2.  Loan Interest and Protection Law, 41 Pa. Cons. Stat. § 101 . . . . . . . . . . 23

3.  Fair Credit Extension Uniformity Act, 73 Pa. Cons. Stat. § 2270.1 . . . . 29

4.  Unjust Enrichment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

B.  Sufficiency of Pre-Foreclosure Notices Pursuant to Pennsylvania Foreclosure Prevention Act and 15 U.S.C. § 1692e . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

C.  Adequacy of Responses to Qualified Written Requests Under Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e) . . . . . . . . . . . . . . . . . . . . . . . 35

V.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

## I.      INTRODUCTION

Plaintiff Charles Benner is a residential homeowner in Pennsylvania.  His mortgage is serviced by Defendant Bank of America.[1]  Under the mortgage agreement, Defendant is permitted to charge Plaintiff for certain services if he defaults on his mortgage.  In 2009, Plaintiff defaulted and Defendant began performing monthly property inspections in accordance with the terms of the mortgage.  In late 2010, Defendant sent a notice to Plaintiff, as required by Pennsylvania law, of its intention to initiate foreclosure proceedings.  The pre-foreclosure notice listed the specific amounts that Plaintiff was required to pay to cure his default.  Included among them was a fee of $262.50 for the property inspections.   Plaintiff did not pay this fee, nor was his home foreclosed upon, but he contends in this case that the inspections were unnecessary and therefore Defendant's request for payment violated four federal and state laws.  In addition, Plaintiff makes claims against Defendant for conduct unrelated to the property inspection fees.

First, regarding the property inspection fees, Plaintiff contends that the request for payment of these fees violated provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e and § 1692f.  Section 1692e prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," which includes "false representation of . . . the character, amount, or legal status of any debt."  Section 1692f provides that "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) [is prohibited] unless such amount is expressly

---

[1] The Amended Complaint names both Bank of America, N.A. and BAC Home Loans Servicing, L.P. as Defendants.  (Doc. No. 14.)   At all relevant times, BAC Home Loans Servicing, L.P. has been wholly-owned by Bank of America, N.A.  (Id. ¶ 12.)  Thus, the Court will refer to both Defendants collectively as "Defendant Bank of America" or "Defendant."

authorized by the agreement creating the debt or permitted by law."  Plaintiff alleges that false

representations regarding property inspection fees were made by Defendant in violation of the

FDCPA when this Act is considered in conjunction with another statute, the Pennsylvania Loan

Interest and Protection Law (also known as "Act 6 ").

Act 6, which is the second law Plaintiff contends was violated, required Defendant to

send Plaintiff a written notice of its intention to foreclose on his property.  The notice had to

inform him of his "right . . . to cure the default . . . and exactly what performance including what

sum of money, if any, must be tendered." 41 Pa. Cons. Stat.  § 403(c)(3).  Furthermore, Act 6,

among other things, limits the sum of money that can be demanded to "the reasonable costs of

proceeding to foreclosure as specified in writing by the residential mortgage lender actually

incurred to the date of payment." Id. § 404(b)(3).  Plaintiff contends that Defendant's property

inspection fees were unnecessary and thus not "reasonable costs of proceeding to foreclosure" or

even permitted by the mortgage agreement.[2]  Given the specific terms of Act 6, Plaintiff claims

that Defendant falsely stated the amount of Plaintiff's debt in the pre-foreclosure notice in

violation of § 1692e and § 1692f.

Next, Plaintiff contends that Defendant's conduct regarding the inspection fees also

violated the Pennsylvania Fair Credit Extension Uniformity Act, the third law allegedly violated

by Defendant.  This Act states that "[i]t shall constitute an unfair or deceptive debt collection act

or practice under this act if a debt collector violates any of the provisions of the [FDCPA]." 73

Pa. Cons. Stat. § 2270.4.

---

[2] The loan agreement, however, permits Defendant to charge for property inspections "for
the purpose of protecting [its] interest in the Property." (Doc. No. 14 ¶ 28.)

Finally, Plaintiff brings a Pennsylvania common law claim for unjust enrichment, again based on Defendant's attempted collection of the property inspection fees.

Plaintiff also asserts an FDCPA claim against Defendant for conduct unrelated to the property inspection fees. The Pennsylvania Foreclosure Prevention Act (also known as "Act 91") required Defendant's pre-foreclosure notices to include information on how to apply for the Homeowner's Emergency Mortgage Assistance Program ("HEMAP"). 35 Pa. Cons. Stat. § 1680.403c(b)(1). Specifically, Defendant was required to advise Plaintiff as the debtor that he had "thirty (30) days, plus (3) days for mailing, to have a face-to-face meeting with a consumer credit counseling agency to attempt to resolve the delinquency or default," id., and that an "application for mortgage assistance [could] be submitted to [HEMAP] beyond the thirty (30)-day period." Id. § 1680.403c(b)(7). Plaintiff contends that Defendant violated § 1692e of the FDCPA by sending pre-foreclosure notices that contained false or misleading information about how and when he could exercise his HEMAP rights under Act 91.

Lastly, Plaintiff argues that Defendant violated federal law by failing to provide adequate responses to his multiple written requests for mortgage information. The Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e), imposes a duty on loan servicers to respond to borrowers' inquiries within a certain time frame. Section 2605(e)(1)(A) states that "the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days." Additionally, § 2605(e)(2) requires servicers — "[n]ot later than 60 days . . . after the receipt from any borrower of any qualified written request" — to provide borrowers with the information requested or a written explanation of why the information is unavailable.

In early 2011, several months after receiving the pre-foreclosure notices, Plaintiff wrote

to Defendant for information about a loan modification offer made by Defendant and the method

used to calculate the amount of his default.  Defendant responded at different times, from

different offices, and allegedly never provided the information requested.  Thus, Plaintiff

contends that Defendant also violated the requirements of RESPA.

On October 20, 2011, Plaintiff filed this lawsuit.[3]  Presently before the Court is

Defendant's Motion to Dismiss Counts I through VI of the Amended Complaint (Doc. No. 16)

for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil

Procedure 12(b)(6).[4]  For reasons that follow, Defendant's Motion to Dismiss will be granted on

Counts I through V and will be denied on Count VI.[5]

---

[3] On December 22, 2011, Plaintiff amended the Complaint.  (Doc. No. 14.)  The
Amended Complaint alleges the following:

- Count I — FDCPA, 15 U.S.C. § 1692e(2) and § 1692f(1), for charging the
property inspection fees
- Count II — FDCPA, 15 U.S.C. § 1692e, for improper Pennsylvania pre-
foreclosure notices
- Count III — Fair Credit Extension Uniformity Act, 73 Pa. Cons. Stat.
§ 2270.1 et seq., for FDCPA violations
- Count IV — Pennsylvania Loan Interest and Protection Law, 41 Pa. Cons.
Stat.  § 101 et seq., for charging the property inspection fees
- Count V — Unjust enrichment
- Count VI — Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e),
for insufficient responses to mortgage loan information requests
- Count VII — Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), for
providing negative reports to credit bureaus
- Count VIII — 15 U.S.C. § 1692c(a)(2), c(c), d(5), for continually
contacting Plaintiff after learning he was represented by an attorney

[4] In the Motion to Dismiss, Defendant is not challenging the sufficiency of the claims
made in Counts VII and VIII.  As such, the Court will not recite facts and law relevant to those
counts.

[5] In deciding this motion, the Court has considered the following: Defendant's Motion to
Dismiss (Doc. No. 16); Plaintiff's Response in Opposition (Doc. No. 22); Defendant's Reply
(Doc. No. 24); arguments of counsel at the March 13, 2012 hearing; Plaintiff's Supplemental

## II.    FACTUAL BACKGROUND

The following facts are drawn from the Amended Complaint, items of public record, and other documents integral to the claims.[6]

### A.    Plaintiff's Mortgage

In 2002, Plaintiff Charles Benner borrowed $147,000 to buy a home in Northeast Philadelphia.  (Doc. No. 14 ¶ 46.)  A mortgage was placed on his home which he refinanced in July 2006 with Allied Mortgage Group, a Pennsylvania lender.  (Id. ¶¶ 47-48, Ex. A.)  The mortgage contained numerous covenants, including the following relevant clauses:

> 7. Preservation, Maintenance and Protection of the Property; Inspections.
> Borrower shall not destroy, damage or impair the Property, allow the
> Property to deteriorate or commit waste on the Property.  Whether or not
> Borrower is residing in the Property, Borrower shall maintain the Property
> in order to prevent the Property from deteriorating or decreasing in value
> due to its condition. . . .  Lender or its agent may make reasonable entries
> upon and inspections of the Property.  If it has reasonable cause, Lender
> may inspect the interior of the improvements on the Property.  Lender shall
> give Borrower notice at the time of or prior to such an interior inspection
> specifying such reasonable cause.
>
> 14. Loan Charges.   Lender may charge Borrower fees for services

---

Memorandum in Opposition (Doc. No. 28); Defendant's Reply (Doc. No. 31); Defendant's Notice of Supplemental Authority in Support of Motion to Dismiss (Doc. No. 32); and Plaintiff's Response (Doc. No. 33).

[6] In deciding a motion to dismiss, a court may consider "documents that are attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)).  Additionally, "'a court may consider an undisputably authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'" Dougherty v. Wells Fargo Home Loans, Inc., 425 F. Supp. 2d 599, 602-03 (E.D. Pa. 2006) (quoting Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorney's fees, property inspection and valuation fees.

(Id. ¶ 28.) Allied Mortgage Group later sold the mortgage to another lender, and Wilshire Credit Corporation began servicing the loan. (Id. ¶ 50.)

During 2009, Plaintiff fell behind on his mortgage payments. (Id. ¶ 51.) After the default, Wilshire Credit offered him the opportunity to modify his mortgage payments through its "Home Affordable Modification Trial Period Plan." (Id. ¶ 53, Ex. B.) The Plan included a three month trial period. This period was to begin on January 1, 2010. The Plan required Plaintiff to take certain steps to implement the modification. (Id.) Plaintiff accepted Wilshire Credit's offer on December 27, 2009, and thereafter made monthly payments at a reduced rate. (Id. ¶ 54, Ex. B.)

On February 1, 2010, Defendant Bank of America notified Plaintiff that it was replacing Wilshire Credit as the servicer of the mortgage. (Id. ¶ 58; Doc. No. 16, Ex. B.) Defendant's notice provided, among other things, information about its status as a "debt collector," a new address where Plaintiff should send his mortgage payments, and details on how to exercise his rights under the Real Estate Settlement Procedures Act ("RESPA"). (Doc. No. 16, Ex. B.) The RESPA information contained the following definition and condition:

> A "qualified written request" is a written correspondence . . . which includes your name and account number, and your reasons for the request. If you want to send a "qualified written request" regarding BAC Home Loans' servicing of your loan, it must be sent to the following address:

BAC Home Loans
Customer Service Correspondence CA6-919-01-41
P.O. Box 5170
Simi Valley, CA 93062-5170

(Id.) After receiving this notice, Plaintiff began sending his reduced monthly payments to

Defendant. (Doc. No. 14 ¶ 58.)

**B.    Defendant's Loan Servicing Practices**

Defendant services residential mortgages nationwide. (Id. ¶ 1.) As a loan servicer, it acts

as an agent for the owner of the loan. (Id. ¶ 15.) Defendant is responsible for billing borrowers

and collecting principal and interest payments. (Id. ¶ 16.) When a borrower defaults on his

mortgage payments, Defendant makes the decision whether to initiate foreclosure or to offer a

loan modification. (Id. ¶ 17.) Defendant can seek reimbursement from borrowers of costs

incurred to ensure property is not deteriorating or being destroyed or that arise from the

foreclosure proceedings. (Id. ¶¶ 16, 26.) For example, property inspections can be made. (Id.

¶ 26.) The charge for an inspection is $15 per month for borrowers in default. (Id. ¶ 81.)

On June 7, 2010, the Federal Trade Commission ("FTC") filed a Complaint in the Central

District of California alleging that Defendant[7] violated the FTC Act by charging borrowers for

"default services, such as property inspections and title reports, that in some instances were not

reasonable and appropriate" under the mortgage agreement. (Id. ¶ 87; Doc. No. 22-2 ¶¶ 1, 12,

17.) Approximately one week later, the FTC and Defendant filed a Consent Judgment and Order

---

[7] The FTC's Complaint named Countrywide Home Loans, Inc. and BAC Home Loans
Servicing, LP as defendants. (Doc. No. 22-2.) Bank of America acquired both defendants during
the relevant time frame, and therefore the FTC's action also implicated Bank of America. (See
id. ¶¶ 12-13.) The Complaint did not, however, specifically allege that Bank of America
participated in any wrongful conduct. (Id. ¶ 4.)

in which Defendant agreed to, among other things, not assess or collect "any Fee for a Default-Related Service unless it is a reasonable Fee charged . . . for a Default-Related Service that is actually performed."[8]  (Doc. No. 14 ¶ 88; Doc. No. 22-3 at 8.)

### C.    Defendant's Pre-Foreclosure Notices

Defendant charged Plaintiff for default-related services.  On November 8, 2010, approximately nine months after Defendant began servicing Plaintiff's mortgage, it sent him a letter with the following caption in large, bold letters across the top:

ACT 91 NOTICE
TAKE ACTION TO SAVE
YOUR HOME FROM
FORECLOSURE

(Doc. No. 14 ¶ 60, Ex. C.)  The Act 91 Notice, which contained Defendant's logo and payment stub, advised Plaintiff "that the mortgage on [his] home is in default, and the lender intends to foreclose."  (Id.)  Plaintiff was informed that proceedings would commence unless he: (1) applied for assistance with the Homeowner's Emergency Mortgage Assistance Program (HEMAP) or (2) "cure[d] the default within thirty (30) days of the date of this notice by paying the total amount past due to the lender, which is $27,184.02 plus any mortgage payments and late charges which become due during the thirty (30) day period."  (Id.)  The total amount due was comprised of monthly charges, late charges, and a $262.50 charge listed as "INSPECTION-OCCUPIED." (Id.)

The Act 91 Notice provided Mr. Benner with the following instructions on HEMAP:

---

[8] The Consent Judgment and Order were not an admission of wrongdoing.  (Doc. No. 22-3 at 8.)