possibility of a mortgagee's convincing [the court] that, in a given specific factual situation, inspections might be sufficiently necessary . . . , e.g., if the premises were vacant or were subject to waste because of certain specific circumstances." Id.

In the instant case, Plaintiff's legal theory — that Defendant's property inspection fees were not "reasonable" foreclosure costs under Pennsylvania law, and therefore false representations in violation of § 1692e(2) of the FDCPA — is one of first impression in the Third Circuit. Plaintiff does not allege the property inspections were fraudulent, but rather that conducting them was unnecessary and simply a way for Defendant to generate revenue after Plaintiff's default.[10] His attempt to turn the pre-foreclosure notices required under Pennsylvania law into an FDCPA claim is unprecedented. Based on the language of Act 6 and other relevant court decisions cited above, this Court is not convinced that Plaintiff's contentions rise to the level

---

[10] As noted above, on June 7, 2010 the FTC filed a Complaint against Defendant in the Central District of California alleging, among other things, that Defendant was charging defaulted borrowers for unnecessary property inspection fees. (See Doc. No. 22-2.) One week later, the case was resolved with a stipulated Consent Order and Judgment. (See Doc. No. 22-3.) Plaintiff relies on the facts contained in the FTC Complaint to support the assertion in this case that Defendant's property inspection fees are unreasonable. (See Doc. No. 14 ¶¶ 87-89.) An almost identical allegation was made by the plaintiff in Mendez v. Bank of Am. Home Loans Servicing, LP, 840 F. Supp. 2d 639 (E.D.N.Y. 2012). In Mendez, the plaintiff relied on the same FTC case against Defendant in order to challenge the lawfulness of Defendant's default related service charges. See id. at 645. The Mendez court refused, however, to rely on the allegations of wrongdoing from the FTC case to support the alleged wrongdoing in the present case because (1) "the Consent Order and Judgment . . . which was entered into by stipulation, [did] not make such a finding," and (2) the plaintiff "cannot rely on past conduct allegedly in violation of the FTC Act that was addressed by the FTC Complaint and subsequent Consent Order and Judgment to now assert that the Defendant's recent conduct also is necessarily in violation of that Act or other laws" Id. at 659. This Court agrees with the conclusion reached in Mendez. No unlawful conduct can be reasonably inferred from a prior lawsuit in another judicial district that was resolved with a Consent Order and Judgment which explicitly stated that "Defendants have not admitted any of the allegations of wrongdoing set forth in the Complaint, and entry of this Order is not an admission of any such allegations of wrongdoing or violation of law." (See Doc. No. 22-3 ¶ 4.)

of a false or misleading representation under the FDCPA.

First, neither federal nor state law expressly prohibits lenders from charging defaulted borrowers for property inspections. It is not expressly forbidden by the FDCPA. As indicated by Sacko, Cervantes, and Burwell, courts have acknowledged situations in which it is appropriate in Pennsylvania for lenders to charge and recover such fees.

Second, Plaintiff defaulted on the loan and, similar to the situation in Sacko and Cervantes, paragraph fourteen of the mortgage agreement permits Defendant to charge for property inspections "for the purpose of protecting [its] interest in the Property."[11]

Finally, unlike this case, the Third Circuit cases interpreting § 1692e of the FDCPA involve conduct by debt collectors who provided debtors with false or misleading information about the debt collection process. As noted above, in Lesher, a law firm logo was prominently displayed on collection letters, yet the firm was acting as a debt collector not an attorney. In Rosenau, the collection letter was signed "Legal Department," but the department contained no

---

[11] Plaintiff does not dispute Defendant's right to charge for property inspections. At the March 13, 2012 court hearing, Plaintiff's counsel stated the following:

> So what does the mortgage tell us? It tells us that [Defendant] can make reasonable inspections of the property, that they can — if the borrower falls behind in payments, [Defendant] can do whatever's reasonable or appropriate to protect their interest. And paragraph 14 says more specifically that they can incur fees for services performed in connection with the borrower's default and those fees can include besides attorneys' fees, property inspections.

(Mot. Dismiss Hr'g Tr. 47:13-20, Mar. 13, 2012.) Nor does Plaintiff contend that the inspections were not actually conducted. (See Doc. No. 14 at 1, 20; Doc. No. 22 at 8.) Despite these concessions, Plaintiff is attempting to change the clear language of the mortgage through statutory juggling in order to justify his claim that the property inspection fees were improper false statements.

lawyers. In Crossley, the letter threatened legal action within one week, which is explicitly prohibited by Pennsylvania law. In this case, charging for a property inspection is authorized in the mortgage and is not barred from being collected by any law. In fact, as noted above, Section 404(b)(3) of Act 6 provides that to cure a default a residential mortgage debtor shall pay "the reasonable costs of proceeding to foreclosure as specified in writing by the residential mortgage lender actually incurred to the date of payment." Notifying a defaulted debtor that a property inspection fee is due is not a false statement under Act 6 or the FDCPA.

Moreover, Plaintiff's contention that Defendant's January 4, 2011 mortgage invoice falsely represented its right to conduct properties inspections is equally unpersuasive. Plaintiff was in default when Defendant sent the January mortgage statement. The statement advised Plaintiff that his account was still "seriously delinquent" and stated the following: "As long as your loan remains delinquent, [Defendant] will conduct inspections of your property on a periodic basis. These inspections are provided for in your loan documents."

There is nothing false or misleading about this statement. Plaintiff's mortgage specifically allows for property inspections. As noted previously, paragraph fourteen of Plaintiff's mortgage informs him that "Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the property and rights under this Security Instrument, including . . . property inspection . . . fees." The monthly mortgage statement directed Plaintiff to his loan documents for information on property inspections, and in those documents the right to inspect is clearly stated. For the foregoing reasons, the Court will dismiss Plaintiff's claim that Defendant violated § 1692e(2) as alleged in Count I.

### b.     Loan Servicing Practices — § 1692f

Using the same facts described above regarding the property inspections, Plaintiff also alleges a FDCPA violation under § 1692f(1). Section 1692f prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt." Thus, "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) [is prohibited] unless such amount is expressly authorized by the *agreement creating the debt* or *permitted by law*." § 1692f(1) (emphasis added). "The only inquiry under § 1692f(1) is whether the amount collected was expressly authorized by the agreement creating the debt or permitted by law. . . ." Allen ex rel. Martin v. LaSalle Bank, N.A., 629 F.3d 364, 368 (3d Cir. 2011). The Third Circuit directly addressed § 1692f(1) in Pollice v. Nat'l Tax Funding, L.P., 225 F.3d 379, 406-08 (3d Cir. 2000), adopting the following three-part analysis:

> If state law expressly permits service charges, a service charge may be imposed even if the contract is silent on the matter;
>
> If state law expressly prohibits service charges, a service charge cannot be imposed even if the contract allows it;
>
> If state law neither affirmatively permits nor expressly prohibits service charges, a service charge can be imposed only if the customer expressly agrees to it in the contract.

Id. at 407-08 (internal quotation and citation omitted).

In Pollice, Pittsburgh government agencies had thousands of claims against homeowners with delinquent taxes, water, and sewer charges. Id. at 385. The interest rate that municipal governments, such as Pittsburgh, could lawfully charge debtors was 10% annually under the Pennsylvania Municipal Claims and Tax Liens Law. Id. at 390. A local Pittsburgh ordinance, on the other hand, allowed debt collectors to charge rates up to 12%. Id. at 386. The Pittsburgh

agencies sold the claims to debt collectors, who then charged the municipal debtors at the 12% rate. Id. at 385-86. Using the analysis set forth above, the Third Circuit held that the debt collectors violated § 1692f(1) because under Pennsylvania law only 10% could be charged. Under the second category, the debt collectors' rates were not permissible because they were in direct violation of state law. Id. at 407. The debt collectors' actions were also not allowable under the third category, since homeowners had not expressly agreed to these interest and penalty rates when they applied for municipal services. Id. at 408.

    Here, Plaintiff does not dispute that Defendant is permitted to charge property inspection fees. Rather, he contends that Defendant's practices, such as conducting automatic inspections for borrowers in default, is not permissible under the terms of the mortgage or relevant Pennsylvania law, and therefore is in violation of § 1692f(1). The Court disagrees. Using the Pollice test, Defendant's imposition of property inspection charges falls into the third category; that is, property inspection charges are neither affirmatively permitted nor expressly prohibited under Pennsylvania law and were expressly agreed to in the mortgage contract. There is no reference at all to property inspection charges in the Pennsylvania statutes at issue in this case. Accordingly, the fees can only be charged if expressly agreed to in the contract creating the debt. Unlike the situation in Pollice, the fourteenth paragraph of Plaintiff's mortgage agreement expressly allows Defendant to charge for conducting property inspections once a borrower is in default.[12] The

---

[12] In Mendez v. Bank of Am. Home Loans Servicing, LP, 840 F. Supp. 2d 639 (E.D.N.Y. 2012), the court reached a similar conclusion. The mortgage at issue in Mendez, which is nearly identical to paragraph fourteen of Plaintiff's mortgage, stated the following:

> Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to,

Court will therefore dismiss Count I of the Amended Complaint, which alleges violations of both § 1692e and § 1692f.

### 2.  Loan Interest and Protection Law, 41 Pa. Cons. Stat. § 101

In Count IV of the Amended Complaint, Plaintiff alleges that, apart from the FDCPA, Defendant's property inspection fees also violate Act 6, the Pennsylvania Loan Interest and Protection Law.  For reasons that follow, the Court will grant Defendant's Motion to Dismiss Count IV.

As noted above, Act 6 requires lenders to provide notice of an intention to foreclose on a residential mortgage.  41 Pa. Cons. Stat. § 403.  Section 403(c) specifically requires that lenders send written notice containing, among other things, "[t]he right of the debtor to cure the default as provided in Section 404."  Id. § 403(c)(3).  Section 404 not only covers the right to cure a default, but also permits a lender to include certain items in the amount necessary to cure the default.  The amounts are set forth in Section 404(b) and, as noted previously, are limited to the following:

> (1) Pay or tender in the form of cash, cashier's check or certified check, all sums which would have been due at the time of payment or tender in the

---

> attorneys' fees, property inspection and valuation fees. . . .

Id. at 656.  The plaintiff claimed breach of contract and deceptive practices under New York General Business Law based on the defendant's allegedly excessive property inspection fees.  Id. at 656-59.  In Mendez, as in this case, the court dismissed the plaintiff's claims because: (1) there was "no plausible claim that the inspection fees charged by the [d]efendant were in violation of any express terms of his actual mortgage contract," and (2) the "actual mortgage contract contained no express limitation on the appropriate amount of default related servicing fees."  Id. at 657, 659; see also Dougherty v. Wells Fargo Home Loans, Inc., 425 F. Supp. 2d 599, 607 (E.D. Pa. 2006) (dismissing § 1692f(1) claim challenging mortgage company's right to charge borrower for attorney's fees because "paragraph 7 [of the mortgage] expressly authorizes [the mortgage company] to pay costs to protect the value of the mortgaged property, including attorney's fees, and to charge [the borrower] for such fees").

>  absence of default and the exercise of an acceleration clause, if any;
>
>  (2) Perform any other obligation which he would have been bound to perform in the absence of default or the exercise of an acceleration clause, if any;
>
>  (3) Pay or tender any reasonable fees allowed under section 406 [i.e., attorney's fees] and *the reasonable costs of proceeding to foreclosure as specified in writing by the residential mortgage lender actually incurred to the date of payment.*
>
>  (4) Pay any reasonable late penalty, if provided for in the security document.

Id. § 404(b) (emphasis added). Section 504 permits individual lawsuits against lenders that violate the provisions of Act 6 where damages are incurred. Section 504 reads in full:

>  Any person affected by a violation of the act shall have the substantive right to bring an action on behalf of himself individually for damages by reason of such conduct or violation, together with costs including reasonable attorney's fees and such other relief to which such person may be entitled under law.

In this case, Plaintiff alleges that the property inspection fees were unlawful under Section 404(b) because they were not "reasonable costs of proceeding to foreclosure," and therefore he is entitled to damages pursuant to Section 504. Because Plaintiff has not yet paid the inspection fees, Defendant argues that he cannot bring suit under Section 504 because he has not suffered any damages. Neither Act 6 nor the Pennsylvania courts have further defined the term "damages" as used in Section 504. Therefore, the Court must follow the rules laid out in the Pennsylvania Statutory Construction Act, 1 Pa. Cons. Stat. § 1501 et seq., in order to determine the meaning of "damages" in Section 504.

"[T]he legislative intent behind the statute's enactment controls its meaning and application." United Cerebral Palsy v. Workmen's Comp. Appeal Bd., 673 A.2d 882, 887 (Pa. 1996) (citing 1 Pa. Cons. Stat. § 1921(a); Frontini v. Commonwealth Dep't of Transp., 593 A.2d

410, 411-12 (Pa. 1991)). To ascertain legislative intent, a court should consider, among other things, "[t]he occasion and necessity for the statute," "[t]he circumstances under which it was enacted," and "[t]he mischief to be remedied." 1 Pa. Cons. Stat. § 1921(c). Additionally, a court should "interpret statutes or parts of statutes that are *in pari materia* together as one statute." Narberth Borough v. Lower Merion Twp., 915 A.2d 626, 634-35 (Pa. 2007) (citing 1 Pa. Cons. Stat. § 1932(b)). "[A]ll sections of a statute must be read together and in conjunction with each other, and construed with reference to the entire statute." Hous. Auth. of the County of Chester v. Pa. State Civil Serv. Comm'n, 730 A.2d 935, 945 (Pa. 1999) (citations omitted).

Following these rules of statutory interpretation, the Court first looks to the purpose of Act 6. Federal and state courts — in explaining and applying the provisions of Act 6 at issue in this case — have consistently defined the Act in the following manner. Act 6 is a "'comprehensive interest and usury law with numerous functions,' one of which is that 'it offers homeowners with 'residential mortgages' a measure of protection from overly zealous 'residential mortgage lenders.'" In re Graboyes, 223 Fed. Appx. 112, 114 (3d Cir. 2007) (quoting Beckett v. Laux, 577 A.2d 1341, 1343 (Pa. 1990)). "The comprehensive statutory scheme demonstrates an extensive program designed to avoid mortgage foreclosures." Bennett v. Seave, 554 A.2d 886, 891 (Pa. 1989). In the residential mortgage context, the Act is "typically raised as a defense to mortgage foreclosure proceedings." Id. (citations omitted).

Thus, the remedy for a defective Act 6 notice, such as the pre-foreclosure notice at issue in this case, is typically to set aside the foreclosure or deny a creditor the ability to collect an impermissible fee. See, e.g., In re Smith, 866 F.2d 576, 578, 586 (3d Cir. 1989) (holding lender's failure to properly send pre-foreclosure notice to Plaintiff's new address before initiating

foreclosure suit gave rise to a cause of action for damages under Section 504 of Act 6); id. at 586 (citing Main Line Fed. Sav. & Loan Ass'n v. Joyce, 632 F. Supp. 9, 10 (E.D. Pa. 1986) (noting proper pre-foreclosure notice is jurisdictional prerequisite for foreclosure action)); id. (citing In re Sharp, 24 B.R. 817, 821 (Bankr. E.D. Pa. 1982) (setting aside foreclosure where lender failed to determine debtor's last known address)); In re Burwell, 107 B.R. 62, 67-68 (Bankr. E.D. Pa. 1989) (denying creditor ability to collect property inspection fees on foreclosed mortgage in debtor's bankruptcy proceeding). The purpose of Act 6, as shown by the cases above, is to help residential homeowners reacquire property that has been lost, or to prevent the imminent loss of money or property, because of the impermissible actions of residential mortgage lenders.

When Section 504 is read in conjunction with other sections of Act 6, the word "damages" only refers to the loss of money or property. Section 504 falls within Article V of the Act. Article V lists the "Remedies and Penalties" available to those that have been affected by an Act 6 violation. Within Article V, Sections 501 through 504 address the items that are recoverable for such a violation. Section 501, which is entitled "Excessive interest need not be paid," permits a debtor to reduce the amount of his debt by the amount of interest being charged in excess of the statutory maximum, even if the debtor has not actually paid the excessive interest at the time of the lawsuit. Specifically, Section 501 states:

> When a rate of interest for the loan or use of money, exceeding that provided by this act or otherwise by law shall have been reserved or contracted for, the borrower or debtor shall not be required to pay to the creditor the excess over such maximum interest rate and it shall be lawful for such borrower or debtor, at his option, to retain and deduct such excess from the amount of such debt providing the borrower or debtor gives notice of the asserted excess to the creditor.

Section 502, which is entitled "Usury and excess charges recoverable," allows a debtor to recover