excessive interest and other impermissible charges that he has actually paid to his creditor, and, within a certain time frame, triple the amount paid. Section 502 reads in full:

> A person who has paid a rate of interest for the loan or use of money at a rate in excess of that provided for by this act or otherwise by law or has paid charges prohibited or in excess of those allowed by this act or otherwise by law may recover triple the amount of such excess interest or charges in a suit at law against the person who has collected such excess interest or charges: Provided, That no action to recover such excess shall be sustained in any court of this Commonwealth unless the same shall have been commenced within four years from and after the time of such payment. Recovery of triple the amount of such excess interest or charges, but not the actual amount of such excess interest or charges, shall be limited to a four-year period of the contract.

Section 503 permits a debtor to recover the reasonable fees paid to his attorney after prevailing in an Act 6 lawsuit. Lastly, as noted above, Section 504 permits individuals to bring suit "for damages" against those that have violated any provision of the Act.

The relationship between Sections 501, 502, and 504 — for purposes of interpreting the word "damages" in Section 504 — is most instructive. In Section 501, the legislature expressly permits a debtor to recover for excessive interest charges despite the fact that the debtor has not yet paid the unlawful amount. Section 501 only allows this remedy, though, for unlawful interest, not other unlawful charges. Other unlawful charges, such as those that are not reasonable in proceeding to foreclosure, are addressed in Section 502. Section 502 only allows recovery of other unlawful charges when such amounts have actually been paid to a creditor. The legislature has therefore singled out excessive interest charges as money that can be recovered before being paid; other excess charges can only be recovered after being paid. Neither Sections 501 nor 502 address lost property, but, consistent with the purpose of Act 6, "damages" in Section 504 has been read, as noted in the cases above, to include loss of property. However, to read "damages" in

Section 504 to also include a creditor's unlawful yet unpaid charge, would render Sections 501 and 502 superfluous. There would be no need for the legislature to have drawn the distinction between paid and unpaid interest and other charges, if all unlawful charges could be remedied through the "damages" language in Section 504.[13]

Therefore, based on the above analysis, the Court concludes that the word "damages" used in Section 504 encompasses only the actual loss of money or property. Here, Plaintiff cannot recover under Act 6 — regardless of whether the property inspections fees were "reasonable costs of proceeding to foreclosure" — because he has not established that he suffered any damages as required by Section 504. Plaintiff has not paid the inspection fees nor suffered any other loss that would fall within the ambit of actual loss of money or property, such as a lien on his property or the loss of his home in foreclosure.[14] His lawsuit was filed prematurely.[15] Accordingly, the Court

---

[13] This conclusion is further supported by the maxim of statutory interpretation *expressio unius est exclusio alterius* (the express mention of one thing excludes all others). This principle can be a useful guide so long as it does not conflict with any rules set forth in the Pennsylvania Statutory Construction Act. See St. Elizabeth's Child Care Ctr. v. Dep't of Pub. Welfare, 963 A.2d 1274, 1275, 1278 (Pa. 2009). Here, the legislature expressly mentioned unpaid excessive interest as a recoverable item in an Act 6 lawsuit. It therefore follows that the express mention of unpaid interest excludes the recovery of other types of unpaid charges.

[14] Plaintiff cites Albanese v. Portnoff Law Assocs., Ltd., 301 F. Supp. 2d 389, 403 (E.D. Pa. 2004), for the proposition that merely charging for property inspections can give rise to Act 6 liability. But Albanese differs from this case in two key respects. First, the plaintiff's failure in Albanese to pay delinquent trash collection fees, and interest charged on those fees, caused the defendant to obtain a lien on plaintiff's property. A lien on property is sufficient to show damages under Section 504. Second, the plaintiff in Albanese brought suit under Sections 501 and 502 of Act 6. Section 501 expressly allows an individual to bring suit for excessive interest rate charges without requiring a plaintiff to actually pay those charges first. Thus, Plaintiff in the instant case must point to something more than merely being billed for property inspections in order to bring suit under Section 504 of Act 6.

[15] It seems anomalous, if Plaintiff's position is correct, that a borrower who fails to make his monthly mortgage payments, for whatever reason, and then fails to pay a service fee as agreed

will grant Defendant's Motion to Dismiss Count IV of the Amended Complaint.

### 3. Fair Credit Extension Uniformity Act, 73 Pa. Cons. Stat. § 2270.1

For reasons that follow, the Court also will grant Defendant's Motion to Dismiss Count III of the Amended Complaint alleging a violation of the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA"), 73 Pa. Cons. Stat. § 2270.1 et seq., as enforced by the remedial provision of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Cons. Stat. § 201-9.2. Section 2270.4(a) of the FCEUA states:

> It shall constitute an unfair or deceptive debt collection act or practice under this act if a debt collector violates any of the provisions of the Fair Debt Collection Practices Act. . . .

A violation of the FCEUA "shall constitute a violation of the . . . Unfair Trade Practices and Consumer Protection Law ["UTPCPL"]." Id. § 2270.5(a). Since the FCEUA does not provide individuals with the right to institute private causes of action for violations, individual plaintiffs must use 73 Pa. Cons. Stat. § 201-9.2, the remedial provision of the UTPCPL, to obtain relief. Therefore, the law governing UTPCPL claims also governs Plaintiff's FCEUA claim in this case.

"[T]he UTPCPL is to be liberally construed to effectuate its objective of protecting the consumers of this Commonwealth from fraud and unfair or deceptive business practices." Ash v. Cont'l Ins. Co., 932 A.2d 877, 881 (Pa. 2007). In a private UTPCPL action, a plaintiff must prove that he "suffer[ed] [an] ascertainable loss of money or property, real or personal, as a result" of defendant's actions. 73 Pa. Cons. Stat. § 201-9.2; see also Weinberg v. Sun Co., 777 A.2d 442,

---

to in the mortgage contract after a default, can sue the lender for money damages for being charged for the service allowed by mortgage. A mortgage once properly executed is a contract which binds the parties to its terms. See Fid. Nat'l Title Ins. Co. v. Craven, No. 12-4306, 2012 WL 5881856, at *10 (E.D. Pa. Nov. 21, 2012) (noting three mortgages were proper basis for breach of contract claim under Pennsylvania law).

446 (Pa. 2001). While the Pennsylvania Supreme Court mandates a liberal construction of the UTPCPL, lower court cases and the plain language of the statute indicate an actual loss of money or property must have occurred to state a cognizable UTPCPL claim. See, e.g., Brock v. Thomas, 782 F. Supp. 2d 133, 137 (E.D. Pa. 2011) (Plaintiff alleged loss of title to his Philadelphia residence because of Defendant's fraudulent conduct); Baynes v. George E. Mason Funeral Home, Inc., No. 09-153, 2011 WL 2181469, at *5 (W.D. Pa. June 2, 2011) (Plaintiff had proven loss of money when he purchased defective steel casket instead of solid bronze one that was advertised). A plaintiff must be able to point to money or property that he would have had but for the defendant's fraudulent actions. See Rubenstein v. Dovenmuehle Mortg., Inc., No. 09-721, 2009 WL 3467769, at *6 (E.D. Pa. Oct. 28, 2009) (dismissing UTPCPL claim against mortgage company because plaintiffs could not show an ascertainable loss from mortgage company's failure to immediately disclose that they did not have plaintiffs' complete mortgage payment history); Solarchick ex rel. Solarchick v. Metro. Life Ins. Co., 430 F. Supp. 2d 511, 516 (W.D. Pa. 2006) ("A party cannot lose what she does not or will not have, and cannot be compensated for a loss not suffered.").

In this case, Plaintiff has not identified an "ascertainable loss of money or property" that he suffered to establish a UTPCPL claim. Defendant charged Plaintiff $262.50 for property inspections. According to the Amended Complaint, Plaintiff has not paid the $262.50 fee. This fee is an outstanding liability, but does not constitute a "loss of money or property."[16] Without

---

[16] In Plaintiff's Supplemental Memorandum, he argues that the imposition of property inspection fees was "an increase in [his] mortgage debt and corresponding loss of home equity" and thus an "ascertainable loss" under the statute. (Doc. No. 22 at 27.) The fallacy of this argument stems from the fact that Plaintiff has not sold his home. He therefore has no actual loss from this increase in his liabilities. At this point, the loss is merely a possible loss, which is

actually paying for the allegedly improper inspection fees, Plaintiff's FCEUA claim, as brought under the UTPCPL, in Count III of the Amended Complaint fails because of his inability to show an "ascertainable loss of money or property" required by the statute.

### 4. Unjust Enrichment

The Court will also grant Defendant's Motion to Dismiss the unjust enrichment claim in Count V of the Amended Complaint. Plaintiff has a mortgage contract that allows Defendant to collect property inspection fees from borrowers in default. Pennsylvania law precludes him from bringing an unjust enrichment action when the relationship of the parties is based on a written contract.

"An action based on unjust enrichment is an action which sounds in quasi-contract or contract implied in law." Sevast v. Kakouras, 915 A.2d 1147, 1153 n.7 (Pa. 2007) (citing Schott v. Westinghouse Elec. Corp., 259 A.2d 443, 448 (Pa. 1969)). "A quasi-contract imposes a duty, not as a result of any agreement, whether express or implied, but in spite of the absence of an agreement, when one party receives unjust enrichment at the expense of another." AmeriPro Search, Inc. v. Fleming Steel Co., 787 A.2d 988, 991 (Pa. Super. 2001) (citation omitted). "The Supreme Court of Pennsylvania has concluded that 'the quasi-contractual nature of unjust enrichment [is] *inapplicable* when the relationship between the parties is *founded on a written agreement or express contract.*'" Benefit Trust Life Ins. Co. v Union Nat'l Bank of Pittsburgh, 776 F.2d 1174, 1177 (3d Cir. 1985) (quoting Schott, 259 A.2d at 448) (emphasis added). Thus, "[d]ismissal of an unjust enrichment claim is appropriate upon a motion to dismiss when the relationship between the parties is founded on a written instrument." Harold ex rel. Harold v.

---

insufficient to establish a UTPCPL claim.

-31-

McGann, 406 F. Supp. 2d 562, 579 (E.D. Pa. 2005) (citations omitted).

Here, Plaintiff has a direct contractual relationship with Defendant that is governed by the written home mortgage agreement. The agreement addresses numerous topics, including Defendant's ability to charge for property inspections if Plaintiff defaults — as he admittedly did — on his mortgage payments. Plaintiff has a right, of course, to challenge the reasonableness of those charges, but a theory of unjust enrichment is not the proper legal vehicle. The Court will therefore dismiss Count V of the Amended Complaint.

    **B.**    **Sufficiency of Pre-Foreclosure Notices Pursuant to Pennsylvania Foreclosure Prevention Act and 15 U.S.C. § 1692e**

In Count II of the Amended Complaint, Plaintiff makes another claim, albeit for a different reason, that Defendant violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e. The violation consists of Defendant's action in providing him with pre-foreclosure notices that contained false or misleading information about his legal rights under the Pennsylvania Foreclosure Prevention Act (also known as "Act 91"), § 35 Pa. Cons. Stat. § 1680.401c et seq. Specifically, in the Amended Complaint, Plaintiff contends that Defendant misinformed him that: (1) he only had thirty days — instead of thirty-three days — to have a face-to-face meeting with a counseling agency; (2) his ability to apply to the Home Emergency Mortgage Assistance Program ("HEMAP") ended after thirty-three days; and (3) Defendant's logo and payment stub were improperly included on the pre-foreclosure notices.[17] Because these

---

[17] Specifically, the Amended Complaint states that Defendant's logo and payment stub were improperly placed on "what was supposed to be an official, state-mandated form, thereby obfuscating the purpose of the notice." (Doc. No. 14 ¶ 110c.) Section 1680.402c(a) requires an Act 91 notice "be given in a form and manner prescribed by the [Pennsylvania Housing Finance Agency]." Section 1680.403c(b)(1) directs the Pennsylvania Housing Finance Agency to prepare a form notice that meets the specific requirements set forth in the statute, and allows lenders and

statements do not violate any of the prohibitions contained in 15 U.S.C. § 1692e, the Court will grant Defendant's Motion to Dismiss Count II of the Amended Complaint.

As noted previously, § 1692e prohibits debt collectors from using false or misleading representations "in connection with the *collection* of any debt." Id. § 1692e (emphasis added). More than sixteen different illegal practices are listed in § 1692e, such as false statements about "the character, amount, or legal status of any debt" and "threat[s] to take any action that cannot legally be taken or that is not intended to be taken." Id. Although the list is not exhaustive, § 1692e clearly seeks to curb abusive practices tied to the "collection" of consumer debt.

The purpose of Act 91 is, among other things, to "give a homeowner the chance to apply for a state loan to help pay off the mortgage in situations where the homeowner cannot meet his mortgage payments because of unemployment, before foreclosure occurs.'" Ayers v. Phila. Hous. Auth., 908 F.2d 1184, 1187 (3d Cir. 1990) (quoting Bennett v. Seave, 554 A.2d 886, 892 (Pa. 1989) (Papadakos, J., concurring)). For example, debt collectors must provide defaulted borrowers with notice that they "may qualify for financial assistance under the Homeowner's Emergency Mortgage Assistance Program." 35 Pa. Cons. Stat. § 1680.403c(b)(1). Debt collectors must advise borrowers that they have "thirty (30) days, plus (3) days for mailing, to have a face-to-face meeting with a consumer credit counseling agency to attempt to resolve the delinquency or default." Id. The Act permits an "application for mortgage assistance [to] be

---

others to send the notice to borrowers. There is nothing, however, in the plain language of Section 1680.402c, Section 1680.403c, or the Pennsylvania Housing Finance Agency's form notice, 12 Pa. Code § 31 app. A, that prohibits lenders from placing their logos or payment stubs on an Act 91 notice. Nor does Plaintiff cite any case law to show the contrary. Accordingly, in addition to the reasons set forth below, the placement of Defendant's logo and payment stub on the Act 91 notices is not a false or misleading statement in violation of § 1692e.

submitted to [HEMAP] beyond the thirty (30)-day period." Id. § 1680.403c(b)(7).

The FDCPA and Act 91 serve different purposes. The FDCPA is aimed at restricting the activities of debt collectors, whereas Act 91 ensures debtors are aware of the potential for state-funded assistance. While both statutes are often implicated in the debt collection process, not every inaccurate statement made during that process is actionable under the FDCPA. See Carlson v. First Revenue Assurance, 359 F.3d 1015, 1018 (8th Cir. 2004) ("The FDCPA was designed to provide basic, overarching rules for debt collection activities; it was not meant to convert every violation of a state debt collection law into a federal violation.").

In this case, Plaintiff points to language in Defendant's pre-foreclosure notices that supposedly misled him about how and when he could apply for state-funded mortgage assistance. But these representations — regardless of their accuracy — do not relate to Defendant's attempt to collect the outstanding mortgage debt. Rather, the statements provided Plaintiff with information about a state-run program designed to help him with his difficult financial situation. Defendant's statements did not mischaracterize the legal status of his mortgage debt, nor did the statements misrepresent how much he owed or Defendant's legal right to collect the debt.[18] Since Defendant's representations relating to Act 91 do not fall within the express or implied prohibitions set forth in § 1692e, the Court will dismiss Count II of the Amended Complaint.

---

[18] The state law remedy for a defective Act 91 notice is to stay foreclosure proceedings or dismiss the lender's foreclosure action for lack of jurisdiction. See, e.g., Beneficial Consumer Disc. Co. v. Vukmam, 37 A.3d 596, 603-04 (Pa. Super. Ct. 2012) (vacating judgment and setting aside sheriff's sale because "Act 91 explicitly states that, before a mortgagee can even commence a mortgage foreclosure action, it must give the mortgagor the notice described in Section 1680.403c"). Here, Defendant never initiated a foreclosure action, and therefore Plaintiff has no remedy under state law for the alleged Act 91 misrepresentations.