C.    **Adequacy of Responses to Qualified Written Requests Under Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e)**

Plaintiff contends that Defendant violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e), by failing to adequately respond to Plaintiff's multiple written requests for information about its loan modification offer and the method used to calculate his outstanding mortgage debt.  For reasons that follow, the Court will deny Defendant's Motion to Dismiss Count VI of the Amended Complaint.

RESPA was enacted after Congress found "that significant reforms in the real estate settlement process [were] needed to insure that consumers throughout the Nation [were] provided with greater and more timely information on the nature and costs of the settlement process."  Id. § 2601(a).  One such reform is the duty RESPA imposes on loan servicers to respond to borrowers' inquiries about their mortgages within a certain time frame.  See id. § 2605(e). Section 2605(e) states the following:

(1) Notice of receipt of inquiry

(A) In general

If any servicer of a federally related mortgage loan receives a qualified written request from the borrower . . . for information relating to the servicing of such loan, *the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days* . . . unless the action requested is taken within such period.

(B) Qualified written request

For purposes of this subsection, a qualified written request shall be a written correspondence . . . that —

(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

          (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

(2) Action with respect to inquiry

*Not later than 60 days . . . after the receipt from any borrower of any qualified written request . . . the servicer shall —*

          (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);

          (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes —

               (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

               (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

          (C) *after conducting an investigation, provide the borrower with a written explanation or clarification* that includes —

               (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

               (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

Id. § 2605(e)(1)-(2) (emphasis added).

     A loan servicer is permitted to "establish a separate and exclusive office and address for the receipt and handling of qualified written requests" from borrowers. 24 C.F.R.

§ 3500.21(e)(1).  In order to trigger duties under RESPA, a loan servicer must actually receive a qualified written request from a borrower.  Morilus v. Countrywide Home Loans, Inc., No. 07-0900, 2007 WL 1810676, at *3 (E.D. Pa. June 20, 2007).  Courts have dismissed RESPA claims where plaintiffs failed to properly send written requests to their loan servicers.  See, e.g., Griffin v. Citifinancial Mortg. Co., Inc., No. 05-1502, 2006 WL 266106, at *2 (M.D. Pa. Feb. 1, 2006) (dismissing RESPA claim where plaintiff sent request to Citifinancial's bankruptcy attorney rather than Citifinancial itself).

In addition to alleging a breach of a duty required to be performed under RESPA, a plaintiff must also show that the breach caused him to suffer damages.  Hutchinson v. Del. Sav. Bank FSB, 410 F. Supp. 2d 374, 383 (D.N.J. 2006) (citing 12 U.S.C. § 2605(f)(1)(A) ("Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure . . . [for] any *actual* damages to the borrower *as a result* of the failure . . . .") (emphasis added).  "Actual damages encompass compensation for any pecuniary loss including such things as time spent away from employment while preparing correspondence to the loan servicer, and expenses for preparing, photocopying and obtaining certified copies of correspondence."  Cortez v. Keystone Bank, Inc., No. 98-2457, 2000 WL 536666, at *12 (E.D. Pa. May 2, 2000).

The Third Circuit has not specifically addressed whether "actual damages" also encompasses non-pecuniary damages, such as mental and emotional suffering, although other circuits have found that RESPA does include such damages.  See Catalan v. GMAC Mortg. Corp., 629 F.3d 676, 696 (7th Cir. 2011); McLean v. GMAC Morg. Corp., 398 Fed. Appx. 467, 471 (11th Cir. 2010) ("Construing the term 'actual damages' broadly, and based on the interpretations of 'actual damages' in other consumer-protection statutes that are remedial in nature, plaintiffs

-37-

arguably may recover for non-pecuniary damages, such as emotional distress and pain and suffering, under RESPA.").

Here, Defendant Bank of America clearly notified Plaintiff that any qualified written requests must be sent to its office in Simi Valley, California. On February 4, March 11, and April 13, 2011, Plaintiff instead sent written requests to Defendant's office in Pittsburgh, Pennsylvania, seeking information about Defendant's loan modification offer and how his mortgage default was calculated. Because no written request was sent to its offices in Simi Valley, California, Defendant argues that Plaintiff's requests did not trigger any duties under RESPA. The Court disagrees.

First, nowhere in the plain language of 12 U.S.C. § 2605(e) or 24 C.F.R. § 3500.21(e)(1), supra, is a borrower required to send his requests to a loan servicer's specified address; the law simply allows a loan servicer to establish such a place. What is required, though, is that the loan servicer actually receive the borrower's request for information. Here, although Defendant has divisions in Pittsburgh, Simi Valley, and throughout the country, each office is still under the management and control of Defendant.

Second, Defendant's Simi Valley office eventually received Plaintiff's requests but failed to respond in accordance with the requirements of RESPA. Although Plaintiff's requests for information were sent to the Pittsburgh office, Plaintiff was ultimately contacted by the Simi Valley office in a letter dated April 28, 2011, which confirms that Defendant was aware in April 2011 of Plaintiff's request for information about the loan modification offer and his mortgage default amount. On May 3, 2011, Plaintiff received a second letter from the Simi Valley office informing him that his request had been sent to the appropriate department for research. RESPA

-38-

required Defendant to provide information about its investigation into these requests within sixty days of receiving the requests. Yet, as of October 2011, when Plaintiff initiated this lawsuit, Defendant had not answered his requests for information.

Defendant also contends that even if its RESPA duties were triggered, Plaintiff has not pled sufficient facts to show he suffered actual damages as a result. The Court again disagrees. Plaintiff alleges he "has suffered fear, anxiety and other emotional distress" as a result of Defendant's actions. The Court finds it reasonable to infer that a borrower in default who repeatedly seeks — yet fails to obtain — information about his financial situation could have damages for mental and emotional suffering. Therefore, the Court will deny Defendant's Motion to Dismiss Count VI of the Amended Complaint.

## V.   CONCLUSION

For the foregoing reasons, the Court will grant Defendant's Motion to Dismiss Counts I through V of the Amended Complaint, and will deny the Motion to Dismiss Count VI of the Amended Complaint. An appropriate Order follows.